WOMACK MACHINE SUPPLY COMPANY
OF HOUSTON, Appellant,

v.

FANNIN BANK, Appellee.

No. 816.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Sept. 12, 1973.

Rehearing Denied Oct. 3, 1973.

Maurice Bresenhan, Jr., Albert H. Wingate, Saccomanno, Clegg, Martin & Kipple, Houston, for appellant.

Russell Talbott, Barry N. Beck, Fulbright, Crooker & Jaworski, Houston, for appellee.

TUNKS, Chief Justice.

"Womack Machine Supply Company of Houston" is the full and correct corporate name of a Texas corporation whose registered office and principal place of business are in Houston, Texas. That corporation will sometimes herein be called the Houston Corporation. "Womack Machine Supply Company" is the name of another Texas corporation whose registered office is in Dallas, Texas. That corporation will sometimes herein be called the Dallas Corporation. There is also a "Womack Machine Supply Company of San Antonio" and a "Womack Machine Supply Company of Louisiana." The Houston corporation is engaged in business as a distributor of fluid power equipment in the Houston area. Apparently the other companies are in the same kind of business in other areas. R. C. Womack owns the controlling share interest in each corporation. Each corporation has other and different shareholders. There is no parent-subsidiary relationship between the corporations. Each has a different set of officers, maintains separate records, has its own bank account and pays its own taxes.

In 1966 the Houston Corporation employed one J. L. McIlwain as general office manager. McIlwain had a personal checking account at the Fannin Bank in Houston. His account was number 613–232. The Houston Corporation did not have an account at that bank. In December of 1967 McIlwain presented to someone at that bank a letter on a letterhead that read

"Womack Machine Supply Co.
Distributors of Fluid Power Equipment".
The letter was as follows

"December 4, 1967

Fannin Bank
P.O. Box 20008
Houston, Texas 77025

Attn: Linda McCollum

To Whom it may Concern:

This letter is to certify that our employee, Mr. J. L. McIlwain, who is general office manager, is authorized to both cash and deposit checks made payable to Womack Machine Supply Company. Checks that are deposited are to be deposited to account # 613 232.

Very truly yours,

WOMACK MACHINE
SUPPLY COMPANY

/s/ R. C. Womack

R. C. Womack
President

RCW/sa

cc: J. L. McIlwain
cc: Womack—Dallas"

The purported signature of R. C. Womack was, in fact, a forgery. No one with authority to do so ever authorized McIlwain to cash or deposit to his own account checks made payable to either the Houston or the Dallas Corporation.

During the period beginning in February, 1967 and ending in May, 1969 McIlwain falsely endorsed and either cashed at Fannin Bank or deposited to his account there about $18,000 worth of checks that belonged to his employer. The checks were given in payment for goods sold or commissions earned by the Houston Corporation.

His employer discovered McIlwain's embezzlement in June, 1969. On August 18, 1969, Womack Machine Supply Company filed a motion to perpetuate the testimony of McIlwain and Glenn Harris, Jr., Vice-President of Fannin Bank. On March 25, 1970, suit was filed against Fannin Bank to recover the amount of the checks stolen. In the petition so filed it is recited, "Now comes Womack Machine Supply Company, hereinafter referred to as Plaintiff. . . ." It also recites, "That Womack Machine Supply Company is a corporation duly organized and existing under the laws of the State of Texas and maintains a place of business at 4006 Dennis, Houston, Texas." The name of the plaintiff in the petition was the exact legal name of the

existing Dallas Corporation. That name was also used in several amended petitions.

The case was tried to a jury. As the evidence was presented it became apparent that the cause of action, if any, proven belonged to the Houston Corporation and not to the Dallas Corporation. After both parties rested the plaintiff on December 7, 1972, requested and was given leave of court to file a trial amendment naming "Womack Machine Supply Company of Houston" as plaintiff. The defendant had already pleaded that all checks negotiated before March 25, 1968, were barred by the two-year statute of limitations. It requested and was given leave to file a trial amendment alleging that the entire cause of action of the Houston Corporation was barred by limitations. Issues were submitted to the jury and a verdict returned. The plaintiff moved for judgment on the verdict and the defendant made a similar motion together with an alternative motion for judgment n. o. v. The trial court rendered judgment for the defendant bank on its motion for judgment n. o. v. reciting that the Dallas Corporation had failed to prove a cause of action and the Houston Corporation's cause of action was barred by limitations. The plaintiff "Womack Machine Supply Company of Houston" has appealed.

Most of the cases involving a pleading defect in the naming of a party involve the erroneous naming of a corporate party defendant. The error becomes significant when the wrong party has been sued and served, the correct party does not appear and participate and the statutory period of limitations has run on the cause of action before the error is discovered by the plaintiff. When that occurs, if there is actually existing a corporation with the name of the erroneously named defendant, it is held that the plaintiff sued the wrong party—not that he misnamed the correct party—and, that since the correct party defendant was not sued within the statutory limitation period, the limitation defense is good. See Stokes v. Beaumont, Sour Lake & Western Railway Co., 161 Tex. 240, 339 S.W.2d 877 (1960); Thomas v. Cactus Drilling Corporation of Texas, 405 S.W.2d 214 (Tex.Civ.App.—Austin 1966, no writ) and cases cited there.

In Phoenix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S.W. 707, 709 (1901) the Supreme Court set out the following test for the determination of the identity of a cause of action for limitation purposes:

"(1) Would a recovery had upon the original bar a recovery under the amended petition? (2) Would the same evidence support both of the pleadings? (3) Is the measure of damages the same in each case? (4) Are the allegations of each subject to the same defenses?"

In this case the latter three prongs of the test must all be answered in the affirmative. The real issue centers upon whether the Houston Corporation would have been barred by a recovery under the original petition. It appears from the record that the real party plaintiff was the Houston Corporation from the outset. The plaintiff's original petition stated the address of the plaintiff as 4006 Dennis, Houston, Texas. From the record it appears that the Houston Corporation was the only such entity doing business at this address. On December 17, 1970, attorneys for the appellee took the deposition of Mr. Neal Smith, who stated that he was General Manager and President of Womack Machine Supply Company of Houston, although he owned stock in the Dallas Corporation. The trial judge, in permitting appellant to file a trial amendment changing the name of the plaintiff, stated that:

". . . the entire pre-trial proceedings in the case show to the Court that that (Womack Machine Supply Company of Houston) was the intended plaintiff and that such was known to Defendant by the records of the case depositions, questions addressed in the Interrogatories, Answers to the Interrogatories, and other proceedings." (Parenthesis added)

Therefore, it is apparent that a recovery by the original plaintiff would have barred recovery by the amended plaintiff.

■ Appellee cites a line of cases which draws a distinction between those cases in which the misnomer is that of a nonexistent entity and those in which it is that of an existing entity—in the former the action is not barred by limitations and in the latter it sometimes is. Stessel v. Bekins Van & Storage Company, 461 S.W.2d 434 (Tex.Civ.App.—San Antonio 1970, no writ); Thomas v. Cactus Drilling Corporation of Texas, 405 S.W.2d 214 (Tex. Civ.App.—Austin 1966, no writ); Krenek v. Epps Super Market No. 2, Inc., 377 S. W.2d 753 (Tex.Civ.App.—Austin 1964, no writ); Nail v. Wichita Falls & Southern Railroad Co., 294 S.W.2d 431 (Tex.Civ. App.—Fort Worth 1956, no writ); Cosand v. Gray Wolfe Co., 262 S.W.2d 547 (Tex. Civ.App.—Galveston 1953, no writ). These cases may be distinguished from the present case because they each involve the situation of a misnamed defendant. In this case suit was brought by a plaintiff under a misnomer. The rationale behind this difference was capably stated in Wisconsin Chair Co. v. I. G. Ely Co., 91 S.W. 2d 913, 914 (Tex.Civ.App.—Fort Worth 1936, no writ):

"The purpose of the statutes of limitation is to prevent the assertion of stale demands, and to effect such purpose they are wholesome and should be applied. We find many cases in which defendants are sued in such a manner that the improper designation of their names will not serve to toll the statutes of limitations, but under our broad and equitable system, it is held that where such a defendant makes his appearance, a subsequent amendment, correctly naming the defendant, relates back to the institution of the suit and tolls the statute. (Citations omitted)

If a defendant, who has been sued under the wrong name, makes his appearance for any purpose best known to him, and such appearance serves to toll the statutes of limitations, as applied to an amended petition, suing him in his correct name, how can it be justly said that, where a defendant is sued in his proper name by a plaintiff, whose name is incorrectly designated, and such defendant makes his appearance for the purpose of contesting the right of the misnamed plaintiff to recover against him, he may be heard to say that he can plead the statutes of limitations against the amended petition which substitutes the properly named plaintiff?"

The Wisconsin Chair Co. case involved a fact situation similar to the facts of this case. The plaintiff in that case filed suit under a trade name and did not amend to change such to the true corporate name until after the limitation period had run. The Court held that the original petition tolled the statute of limitations and that the amended petition did not set out a new cause of action. We follow this decision and others which reached similar results. San Antonio & A. P. Ry. Co. v. D. M. Picton & Co., 111 S.W.2d 842 (Tex.Civ.App. —San Antonio 1937, writ ref'd); J. L. Jones & Co. v. Darden, 29 S.W.2d 479 (Tex.Civ.App.—Amarillo 1930, no writ); Howard v. Stahl, 211 S.W. 826 (Tex.Civ. App.—Amarillo 1919, no writ).

■ The appellant also contends that the statute of limitations was tolled on August 18, 1969, the date the motion to perpetuate testimony was filed. We are unaware of any authority for the position that such an ancillary matter may toll limitations and hold, therefore, that the two-year period of limitation was not tolled until the filing of the plaintiff's original petition on March 25, 1970. It was stipulated that the bank paid $16,613.21 on the forged documents during the two years preceding that date.

■ Both parties to this appeal devoted their entire briefs to the limitations question. On the basis of the discussion above we hold that the trial court erred in grant-

ing Fannin Bank's motion for judgment n. o. v. based upon the two-year-statute of limitations. That, however, does not answer the questions as to the disposition to be made here of this case. The case was tried to a jury and a verdict returned, but the charge and the verdict were not included in the original transcript filed by the appellant. We would be unable to either render judgment in the case or determine whether the trial judge's error on the limitations question was material and harmful without knowing the effect of the jury's verdict. This Court has, therefore, under the authority of Tex.R.Civ.P. 428, directed that a supplemental transcript be certified and transmitted by the clerk of the trial court showing the charge and verdict.

The jury found that the endorsements, which were by rubber stamp, on the plaintiff's checks which McIlwain cashed at the defendant bank were unauthorized; that the bank's reliance on those endorsements "was not in accordance with reasonable commercial standards applicable to businesses such as that of Defendant"; and that such conduct by the bank was a cause of plaintiff's loss. The jury found that the bank failed to determine McIlwain's lack of authority to cash the checks and relied on the letter of December 4, 1967, that in each of those matters the bank failed to act in accordance with reasonable commercial standards and that each was a cause of the plaintiff's loss.

The jury found that the plaintiff failed to make adequate investigation of McIlwain's prior employment, failed to coordinate its inventory with invoices and failed to make timely inspection of its books. Each of such failures was found to be negligence and a contributing cause of McIlwain's unauthorized endorsements.

This verdict and its evidentiary support is not challenged by either party to this appeal. We hold that it sustains a judgment for the plaintiff for $16,613.21, the amount of those checks wrongfully cashed during the two-year period preceding the filing of plaintiff's first original petition.

Tex.Bus. & Comm.Code Ann. sec. 3.406 V.T.C.A. provides:

"Negligence Contributing to Alteration or Unauthorized Signature

Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

The comments under this section include the following:

"6. The section protects parties who act not only in good faith (Section 1–201) but also in observance of the reasonable standards of their business. Thus any bank which takes or pays an altered check which ordinary banking standards would require it to refuse cannot take advantage of the estoppel."

The jury found that the defendant bank failed in three respects to act in accordance with the reasonable commercial standards in cashing the forged checks. Those findings are unchallenged. Because of such findings the plaintiff was not estopped by its negligence from recovery against the bank of its loss.

Reversed and rendered.