CITIZENS STATE BANK OF DICKINSON, Texas, Ind. Exec. of Estate of Fagan Dickson, Appellant,

v.

Sander W. SHAPIRO et al., Appellees.

No. 1171.

Court of Civil Appeals of Texas, Tyler.

Dec. 14, 1978.

Rehearing Denied Jan. 11, 1979.

James R. (Ron) Weddington, Austin, for appellant.

Scott R. Kidd, Jack Maroney, Brown, Maroney, Rose, Baker & Barber, Austin, for appellees.

McKAŸ, Justice.

This is an appeal from a summary judgment granted by the trial court against appellant.

This case arises out of the alleged legal representation by appellees, a firm of attorneys, and two individual members thereof, of J. Fagan Dickson and his then wife, Roberta P. Dickson (now Roberta Crenshaw). Fagan Dickson, the original plaintiff below, died during the course of proceedings in the trial court, and the present appellant, Citizens State Bank of Dickinson, Texas, as Independent Executor of his estate, was substituted as plaintiff.

Fagan Dickson, acting pro se, petitioned the district court on July 9, 1976, for authority to take his own deposition to perpetuate testimony pursuant to Rule 187, T.R. C.P. The court ordered that the deposition be taken before the court on a question-and-answer basis to permit rulings on objections, and the same was taken by video tape on December 20–21, 1976, a transcription of which is a part of the record before us. Fagan Dickson thereafter filed his original petition herein on March 3, 1977.

In final form the petition named as defendants the law firm of Clark, Thomas, Winters and Shapiro, and the individuals, Sander W. Shapiro and Frank N. Ikard, Jr., both of whom were members of said firm. It was alleged that Fagan and Roberta Dickson enjoyed harmonious and profitable marriage and business relationships from 1947 until 1972. In 1971 they retained the defendant law firm to perform various legal services. It was further alleged that defendants Shapiro and Ikard made false and secret communications to Mrs. Dickson to the effect that Dickson had disinherited her two daughters, had kept dishonest books, and had attempted to defraud her. In the spring of 1972, defendant Shapiro, according to the petition, devised a plan concerning the family corporation which called for the transfer of various properties into the name of the corporation, Dickson Properties, Inc., with the effect of placing the bulk of Dickson's separate property and the community property into the corporation which Mrs. Dickson controlled. In April of 1972 this plan was carried out.

Appellant alleged that as a direct and proximate result of the communications made by Shapiro and Ikard to Mrs. Dickson, both the marital and business relationships of the Dicksons significantly deteriorated. Mrs. Dickson filed for divorce on April 8, 1974 and was represented therein by the defendant law firm. The divorce was granted and the property divided. The opinion on appeal of the divorce judgment is reported in *Dickson v. Dickson,* 544 S.W.2d 200 (Tex.Civ.App.—Austin 1976, writ ref'd n. r. e.). Under her powers as a majority shareholder in the family corporation, Mrs. Dickson called a stockholders' meeting and removed Dickson from his position as an officer of the corporation. It was further alleged that at the divorce trial defendants Shapiro and Ikard testified against Fagan Dickson and there told the alleged falsehoods that had theretofore been kept secret. The petition states that from the time the defendant law firm began its representation of the Dicksons until the testimony of Shapiro and Ikard at the divorce trial, the defendants fraudulently concealed their actions and in furtherance of this concealment, wrote Dickson a letter in March of 1972, the purpose of which was to mislead him into thinking there was no conspiracy against him. It was further alleged that the defendants attempted to place all of Dickson's property in a trust to be administered by a bank whom the defendant law firm also represented. Fagan Dickson refused to sign over his property as suggested by the defendants, but it was alleged that this showed that the defendants were working against the interests of Dickson and Mrs. Dickson to the advantage of another client.

There are then alleged in the petition six separate causes of action: (1) the defendants violated the Code of Professional Conduct of the State Bar Act by failing to represent Dickson in an ethical manner, specifically indicating alleged violations of disciplinary rules 4–101, 5–101, 5–102, 5–105, and 7–102; (2) the defendants failed to discharge their duty to exercise the degree of skill and learning ordinarily exercised and possessed under the same circumstances by other attorneys in Austin, Texas, or similar communities; (3) the defendants set out

on a course of conduct which they knew or should have known would destroy the marriage between Fagan Dickson and his wife by alienating and destroying her affections for him and causing her to seek a divorce from him; (4) the defendants breached implied warranties that they would provide Fagan Dickson with accurate information and that they would comply with their obligations under their contract with him and honor the attorney-client privilege; the defendants failed to perform their obligations under the contract, misrepresented facts and law to Fagan Dickson, and divulged privileged information to third parties; (5) the defendants actively interfered with Fagan Dickson's interest in the family business; and (6) the defendants made defamatory statements about Fagan Dickson with intent to disgrace him and to injure his reputation. The petition then alleges damages in the total amount of $19,700,000.00.

In their answer the defendants pleaded a general denial, and specifically that Fagan Dickson sought only to relitigate the issues already determined adversely to him in the divorce suit and that plaintiff was therefore barred by res judicata, collateral estoppel, and estoppel by judgment. The defendants further pleaded that most of the accusatory allegations made by plaintiff involved acts allegedly occurring at such a time that any purported causes of action arising therefrom would be barred by the two-year statute of limitations.

The defendants further state in their answer that the only allegations made by plaintiff not barred by the statute of limitations involved the testimony of Shapiro and Ikard during the divorce action and that such matters are absolutely privileged in law and cannot give rise to a cause of action. Defendants deny that their actions caused plaintiff any financial damage except with regard to the division of property on divorce which was a matter for the discretion of the trial court. Defendants further deny the allegations of violations of the Code of Professional Conduct and specifically deny even representing the plaintiff. Moreover, defendants deny receiving or using any secrets or confidences of the plaintiff, and state that Fagan Dickson, as well as the defendants, was an attorney for Mrs. Dickson and owed the duty of full disclosure to the defendants. Therefore, there were no secrets to be kept.

Appellees, defendants below, submitted their motion for summary judgment under the provisions of Rule 166–A, T.R.C.P., on the ground that there was no genuine issue as to any material fact and they were entitled to judgment as a matter of law.

Appellees' summary judgment proof, attached as exhibits to their motion for summary judgment, consisted of nine items: (1) a certified copy of the divorce judgment; (2) the opinion of the Court of Civil Appeals on the appeal of the divorce case, attached to an affidavit by appellees' attorney attesting to its genuineness; (3) certified copies of pleadings in the divorce action, to-wit: (a) Roberta Dickson's second amended original petition, (b) her second amended original answer to cross-petitioner's [Fagan Dickson's] second amended cross-action, and (c) Fagan Dickson's second amended original answer and second amended cross-action (to be discussed in detail, infra); (4) a certified copy of Fagan Dickson's motion in the divorce action to disqualify Mrs. Dickson's attorneys and strike their testimony; (5) an affidavit by Roberta Crenshaw (formerly Roberta Dickson); (6) an affidavit by Steve Pena; (7) an affidavit by John Anderson; (8) an affidavit by Donald S. Thomas; and (9) an affidavit by Arthur Mitchell.

Appellant's response to appellees' motion for summary judgment indicated that because the original plaintiff, Fagan Dickson, had died during the course of the proceedings, it would be difficult to produce controverting affidavits. Appellant, however, urged the court to consider the deposition of Fagan Dickson and its exhibits which were on file in the trial court.

Inasmuch as this is a summary judgment case, the general rules relating to such judgments must be applied. Rule 166–A(b), T.R.C.P., states, "A party against whom a claim . . . is asserted . . . may, at any time, move with or without support-

ing affidavits for a summary judgment in his favor as to all or any part thereof." Subdivision (c) of that rule states, in part, "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues as expressly set out in the motion or in an answer or any other response."

In summary judgment cases, the question presented for decision on appeal, as it is in the trial court, is not whether the summary judgment proof raises fact issues regarding essential elements of the plaintiff's cause of action, but rather whether such proof establishes as a matter of law that there is no genuine issue of fact as to one or more of said essential elements. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). The rules to be followed by an appellate court in reviewing a summary judgment record were expressed in *Wilcox v. St. Mary's University of San Antonio, Inc.*, 531 S.W.2d 589, 592–3 (Tex. 1975):

"1. The movant for summary judgment . . . has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. [Citations omitted.]

"2. In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant . . . will be taken as true. [Citation omitted.]

"3. Every reasonable inference must be indulged in favor of the non-movants and any doubts resolved in their favor. [Citations omitted.]"

In reviewing a summary judgment case, we must also be ever mindful of the oft-repeated admonition that summary judgment is a procedure to be cautiously applied. *Archer v. Skelly Oil Co.*, 314 S.W.2d 655, 663 (Tex.Civ.App.—Amarillo 1958, writ

ref'd n. r. e., 159 Tex. 154, 317 S.W.2d 47 [1958]).

In its first point of error, appellant asserts that the trial court erred in granting summary judgment if such judgment were based upon a determination that several of appellant's causes of action were barred by limitations. In an action for fraud and deceit, the applicable period of limitations is two years as established by Article 5526, Vernon's Tex.Civ.Stat.Ann. In such case, the cause of action accrues at the time the fraudulent act is perpetrated, unless it is concealed from or unknown to the deceived party, but in any case the period of limitations begins to run upon the discovery of the fraud or when it could have been discovered by the exercise of reasonable diligence. *Quinn v. Press*, 135 Tex. 60, 140 S.W.2d 438, 440, 128 A.L.R. 757 (1940); *Gaddis v. Smith*, 417 S.W.2d 577, 579–80 (Tex.1967). Further, where a motion for summary judgment is predicated on the running of a limitations period, the movant has the burden of negating the discovery rule, if raised by the pleadings of the non-movant, by proving as a matter of law that there was no genuine issue of fact concerning the time when the injured party discovered or should have discovered the nature of the injury. *Weaver v. Witt*, 561 S.W.2d 792, 794 (Tex.1977).

It is appellant's primary contention here that Fagan Dickson did not discover the alleged fraud and deceit by appellees until he heard the testimony of appellee Frank Ikard at the divorce trial on April 1, 1975, and that therefore Dickson's filing suit on March 3, 1977, was within the two-year statute of limitations. Were this the only proof available, appellant might prevail on this point. In the summary judgment proof attached to the motion, however, there is a certified copy of an instrument, which was filed in the previous divorce action, denominated as "Respondent's [i. e., Fagan Dickson's] Second Amended Original Answer and Second Amended Cross-Action," in which Dickson pleads,

"Cross-Petitioner would state that the Cross-Respondent in combination with

her attorneys and others unknown to Cross-Petitioner, entered into a conspiracy and a combination to destroy the Cross-Petitioner's rights in and to the community property accumulated by the Cross-Petitioner and the Cross-Respondent as well as in and to the separate property owned by the Cross-Petitioner in the latter part of 1971 and/or in the first part of 1972. The combination and/or agreement found its manifestations in and to the destruction of Cross-Petitioner's rights in and to the Dickson Properties, Inc. stock by causing internal amendments to be made so as to destroy his cumulative voting rights, so as to destroy his rights to be represented on the Board of Directors of said company, so as to place the Cross-Respondent in absolute and complete control of the company so that Cross-Petitioner's stock in the amount of $3,000,000.00 is now worthless. The fruits of said conspiracy leaves [sic] Cross-Petitioner at the mercy of the dominant control of said company in Cross-Respondent.

"Further carrying out said conspiracy, Cross-Respondent in conjunction with her co-conspirators proceeded to destroy the rights of Cross-Petitioner in and to community realty so as to place the same ostensibly in separate property of Cross-Respondent, to the end that Cross-Petitioner was damaged in an additional amount as to the real property accumulated during the marriage of Cross-Petitioner and Cross-Respondent in the sum of $1,100,000.00.

"Cross-Petitioner further states that not only did the conspiracy have as its purpose the destruction of his interest in and to the stock owned by Cross-Petitioner and in and to the real property owned by Cross-Petitioner but also in and to the homestead rights claimed by Cross-Petitioner in and to the property which he has occupied with Cross-Respondent for many years. The fruits of this conspiracy were that Cross-Petitioner was brutally and physically dispossessed of the homestead, which wrongful dispossession was a part of the total and complete destruction of Cross-Petitioner's property rights, his emotional well being, as well as the physical possession of his homestead.

"Finally, Cross-Petitioner states that the ultimate in the conspiracy is the filing of the divorce case and the final complete act of the conspiracy, a dissolution of the marriage between himself and Cross-Respondent."

Dickson, in said instrument, further alleged damages proximately caused by such conspiracy and prayed judgment therefor. Significantly, this instrument bears a district court file-mark with the date *February 27, 1975*. Appellees maintain that the filing of this instrument, containing as it does allegations of conspiracy by Mrs. Dickson and her attorneys (including appellees herein) against Fagan Dickson, indicates conclusively that Dickson knew more than two years before he filed suit herein of his alleged cause of action for fraud and deceit. We agree.

Appellant correctly states that this instrument was the only summary judgment proof on the issue of limitations. If it proves to be sufficient, however, there need be none other. Assuming that appellant's allegations in the trial court raise a fact issue with regard to fraud and deceit and concealment thereof, and assuming further that the discovery rule applies in these circumstances, appellant is still barred by a plea of limitations if Fagan Dickson delayed an unreasonable time after discovery of facts upon which a cause of action might have been predicated to file suit thereon. The question to be resolved is whether the instrument offered as summary judgment proof by appellees was such that reasonable minds could not differ as to the effect thereof on the issue of limitations. *Edsall v. Edsall*, 238 S.W.2d 285, 288 (Tex.Civ.App. —Eastland 1951, writ ref'd n. r. e.).

Appellant relies heavily upon the case of *Wilson v. Armer Oil Co.*, 496 S.W.2d 702 (Tex.Civ.App.—Fort Worth 1973, no writ). There the plaintiff, an oil company gauger, was employed by Gulf Oil Company to, inter alia, buy oil from other producers; he alleged that he purchased oil from the de-

fendants but that they deceived him as to which wells the oil came from and as a result his employer accused him of wrongdoing and discharged him. The defendants moved for summary judgment on the ground that the plaintiff's cause of action was barred by limitations as a matter of law, as shown by the summary judgment proof. Attached to the motion of one defendant and adopted by the other as part of his motion was a certified copy of a complaint filed in federal court by the plaintiff against his former employer. It was contended in the motions that allegations made by the plaintiff in the federal complaint showed that he acquired knowledge of facts upon which to base his fraud and deceit action more than two years prior to his bringing such action. Neither defendant offered any other documentary evidence in support of his motion. Plaintiff replied that he did not become aware of the fraud practiced upon him until late in October, 1969, a point in time within two years prior to his filing suit against the defendants. The trial court granted summary judgment for both defendants.

On appeal, the Court of Civil Appeals reversed, holding that a pleading filed by a party in another case which contains statements inconsistent with the position he takes in a subsequent case is admissible against him in the later suit as an admission; in the case before it, however, the court held that the federal complaint was not proved up by the defendants so that it constituted legitimate summary judgment evidence. The defendants did not prove it up by deposition, affidavit or admission, and this was held to be fatal to their motions.

The court further held that the defendants were required to lay a proper predicate for introducing the federal complaint by showing the plaintiff to be the same person who filed the complaint and that it was filed by him or his authorized attorney or agent.

As a third reason for reversing the summary judgment, the court stated that admissions by a party contained in a pleading from another case are not conclusive against him, i. e., that he may offer other evidence tending to explain or contradict such admissions, thereby raising a fact issue to be decided by the trier of fact. Thus, even if the federal complaint were considered to be legitimate summary judgment proof, a fact question was presented as to whether the plaintiff was telling the truth when he made the allegations in the federal complaint or when he made the statements to the contrary in his reply to the defendants' motions for summary judgment.

Appellant contends that this case and the holdings therein control the instant case. We do not agree.

Here, as in *Wilson*, the portion of the summary judgment proof relied upon by the movant to show that the cause of action against it is barred by limitations, is a pleading which was filed in another case. The pleading here is certified by the district clerk below to be a true and correct copy of said pleading as it appears on file and of record in his office. There is, however, no sworn affidavit to which the pleading is attached.

The court in *Wilson* quoted the portion of Rule 166-A(e), T.R.C.P., which states, "Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Since the federal complaint was neither attached to nor served with a supporting affidavit, it was held to constitute extrinsic documentary evidence which could not be considered by the trial court in passing on the motions for summary judgment. This court has held, however, that summary judgment proof accompanying the motion therefor need not necessarily be in the form of affidavits nor incorporated within affidavits. *Bagwell v. Lotspeich*, 561 S.W.2d 920, 923 (Tex.Civ.App.—Tyler 1978, no writ). Rather, it may be contained within the motion or may be attached to the motion *or* to an affidavit which is attached to the motion. *Robinson v. Bullock*, 553 S.W.2d 196, 199 (Tex.Civ.App.—Austin 1977, writ ref'd n. r. e.); *Texas National Corp. v. United Systems International, Inc.*, 493 S.W.2d 738,

741 (Tex.1973). "A situation can arise in which a motion might find full support in the depositions or other discovery proceedings, certified copies of documents, and similar instruments which the court could consider without the necessity of a supporting affidavit by a witness." 4 McDonald's Texas Civil Practice sec. 17.26.5 at p. 143 (1971). See also *Whelan v. New Mexico Western Oil & Gas Co.*, 226 F.2d 156 (10th Cir. 1955).

■ The *Wilson* court relied upon the case of *State v. Easley*, 404 S.W.2d 296 (Tex.1966), for its holding that documentary evidence must be attached to a supporting affidavit. An inspection of that opinion, however, demonstrates that this reliance is misplaced. In *Easley*, the Supreme Court states,

"In addition to the 'pleadings, depositions and admissions on file, together with affidavits, if any' as specified by Rule 166–A, . . . the parties introduced extrinsic evidence consisting of . . . [inter alia,] a certified copy of a part of the proceedings in Cause No. 1342 in the County Court . . . . None of items enumerated in the above sentence were attached 'thereto or served therewith' of either of the affidavits supporting either party's motion for summary judgment. A reading of Rule 166–A demonstrates that none of these instruments was entitled to consideration in a summary judgment hearing. The trial court's judgment recites that extrinsic evidence was heard and the trial court filed findings of fact and conclusions of law."

Thus, in *Easley*, the documentary evidence referred to, including papers filed in another proceeding, was introduced before the trial court independent of and apart from other matters on file and the motion and affidavits attached thereto. It is well established that the trial court may not receive evidence, either oral or documentary, at the hearing on a motion for summary judgment, *Baebel v. River Oaks Bank & Trust Co.*, 498 S.W.2d 461, 463 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ); *L. C. Russell Co., Inc. v. Pipeguard Corp.*, 504 S.W.2d 596, 598 (Tex.Civ.App.—Beau-

mont 1973, writ ref'd n. r. e.); and that is the extent of the holding in *State v. Easley* in the portion of that opinion quoted above. The sentence quoted by the *Wilson* court from Rule 166–A(e), states that when other documents are mentioned in an affidavit, they must be attached to or served with it. It does not say, and we do not construe it to mean (as the *Wilson* court apparently did) that all documentary evidence must be attached to or served with an affidavit in order to constitute legitimate summary judgment proof.

■ There was no objection to the summary judgment proof in the trial court. A party may not raise the issue of an alleged defectiveness of the opposing party's summary judgment proof in support of the opposing party's motion for summary judgment, for the first time on appeal. *Sparkman v. Peoples National Bank of Tyler*, 501 S.W.2d 739, 745 (Tex.Civ.App.—Tyler 1973, writ ref'd n. r. e.). The Supreme Court, in *Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230, 234 (Tex.1962), states,

"If [the party against whom summary judgment was rendered] was in any doubt as to these matters or if it was prejudiced in any way by the fact that sworn or certified copies of the operating agreements were not attached to or served with the Johnson affidavit, it should have excepted to the affidavits at or prior to the hearing. The deficiencies which it now urges appear to be purely formal, and it may be assumed that they would have been corrected upon proper exception in the trial court. We hold that objections of this kind may not be raised for the first time on appeal when it fairly appears from the record that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

So it is in the instant case on the issue of limitations. See *McNeill v. Lovelace*, 529 S.W.2d 633, 638 (Tex.Civ.App.—Fort Worth 1975, no writ). Appellant does not dispute the existence of the pleading in the divorce suit or that Fagan Dickson filed it, but only disputes, as will be seen later, the proposi-

tion that Dickson had a factual basis for making the allegations therein at the time they were made.

■ The second basis on which the *Wilson* court relied in reversing the summary judgment was that a proper predicate must be laid before a pleading in another case can be considered as evidence, specifically showing that the plaintiff was the same party who was referred to in the pleading, and a showing that it was filed by him, or by his authorized attorney or agent. In the instant case, from a close examination of the entire record before us, it is clear that all parties and all counsel have acknowledged throughout both the proceedings in the trial court and those before this court, that the Fagan Dickson who was the original party plaintiff herein, was the same person who was the respondent in the prior divorce action and in whose behalf the pleading at issue was filed therein. Although this has never been disputed, appellant makes reference in its brief here to the second holding in *Wilson* and states "such is the situation in the present case." While it is unquestionably the better practice to foreclose all such issues by specific affidavit proof, it is amply demonstrated by the record before us that no one was misled as to the identity of the party who made the pleading in the divorce suit, and that all concerned knew and understood that the Fagan Dickson there was the same person as the Fagan Dickson here. We perceive, therefore, no error in the trial court's granting summary judgment at least partially on the basis of a fact known and recognized by all parties. See *Youngstown Sheet & Tube Co. v. Penn,* supra. Again, this defect is a matter of form which was waived by appellant here by its failure to raise objection thereto in the trial court. Indeed, appellant, in its response to appellees' motion for summary judgment, made no mention of the pleading in the divorce suit which had been submitted to the court with the motion.

The third ground for the reversal in *Wilson* was that a party's admissions in a pleading filed in another case, while evidence of the issue involved are not conclusive against him. The basis for that holding, however, was that there was an affidavit submitted by the party resisting the motion for summary judgment which specifically contradicted the allegations made in the federal complaint, thus raising a fact issue as to the credibility of that party, as found by *Wilson* court. In the instant case, however, there is no such affidavit or any other proof submitted by appellant in response to appellees' motion for summary judgment which specifically contradicts the import of the aforementioned pleading filed by Fagan Dickson in the divorce suit, that import being that Dickson was aware, at the time of the filing of that document, of alleged facts on which to base a cause of action for conspiracy or fraud and deceit.

■ "When a motion [for summary judgment] is supported by affidavits or other extrinsic evidence sufficient on its face to establish facts which, if proven at the trial, would entitle the movant to an instructed verdict, the opponent must show opposing evidentiary data which will raise an issue as to a material fact, or must justify his inability to do so and seek appropriate protection in accord with the procedures [provided by subdivision (f) of Rule 166–A, T.R.C.P.]." [Italics and footnotes omitted.] 4 McDonald's Texas Civil Practice sec. 17.26.8 at p. 156 (1971), and cases there cited; *Gulf, Colorado & Santa Fe Railway Co. v. McBride,* 159 Tex. 442, 322 S.W.2d 492, 500 (1958). Here, appellant indicated to the trial court in its response to appellees' motion for summary judgment that, due to the death of the original plaintiff, Fagan Dickson, "it would be rather difficult for Plaintiffs [sic] to produce controverting affidavits," but it requested no relief under subdivision (f). Appellant did urge the trial court to consider the deposition of Fagan Dickson and the exhibits thereto, which were then on file among the papers of the case. In this court, appellant has pointed out in its brief several instances in said deposition in which Dickson claimed to have been unaware of alleged falsehoods communicated to his wife by appellees until revealed in the testimony of appellee Frank

Ikard on April 1, 1975, in the divorce trial. Dickson, however, never denies knowledge of alleged facts on which he based the cause of action alleged in the second amended original answer he filed in the divorce action. At most, the passages in the deposition emphasized by appellant indicate that Dickson received no direct communications from appellees concerning the matters to which appellees Frank Ikard and Sander Shapiro testified at the divorce trial. Nowhere else in the deposition, its exhibits, or the other proof offered by appellant in response to the motion for summary judgment do we find any direct contradiction of the significance of the pleading at issue. Thus, no fact issue was raised here as it was in *Wilson*.

Moreover, in the instant case, the question in issue is not the admission of specific factual matters pleaded in another action, but the import to be given the fact that the pleading was made and filed. That fact, that Fagan Dickson pleaded in the divorce suit the same cause of action that he asserts here, shows that he had *notice* of assumed facts by virtue of which he had a right of action. We hold that the evidence is such that reasonable minds could not differ as to this effect of said pleading.

With respect to the effect to be given the amended pleading filed by Dickson in the divorce suit, appellant argues that the most to be gleaned from it is that "Fagan Dickson had begun to suspect that the [appellees] might have committed some actions which related to the divorce." We do not agree with this contention. Appellant further asserts that only conclusions, and not facts, were pleaded therein. Inasmuch as the conclusive nature of allegations in a pleading is objectionable only where fair notice to the opponent is not given by the allegations as a whole (Rule 45, T.R.C. P.), the party making them can hardly be allowed to rely later on their conclusiveness as a means of denying their obvious import.

In our view the allegations made by Dickson in the pleading in the divorce suit indicate that he believed and alleged that he had a cause of action at that time

for conspiracy or fraud and deceit, and the record demonstrates that the instant suit was not filed by Dickson or by his estate, within two years from the discovery of his cause of action. In 54 C.J.S. Limitations of Actions § 206e, p. 224, is found this language:

"It is not necessary that a party should know the details of the evidence by which to establish his cause of action; it is enough that he knows that a cause of action exists in his favor, and when he has this knowledge it is his own fault if he does not avail himself of those means which the law provides for prosecuting or preserving his claim."

See *Moore v. Braniff Airways, Inc.*, 54 F.Supp. 422, 424 (N.D.Tex.1944), affirmed 146 F.2d 336 (5th Cir. 1944), cert. denied, 325 U.S. 871, 65 S.Ct. 1411, 89 L.Ed. 1990 (1945); *Phillips Petroleum Co. v. Johnson*, 155 F.2d 185, 191 (5th Cir. 1946), cert. denied, 329 U.S. 730, 67 S.Ct. 87, 91 L.Ed. 632 (1946).

Appellant argues also that appellees were not named in the pleading. The pleading identifies the alleged conspirators only as Mrs. Dickson, "her attorneys and others unknown to [Dickson]." Appellees herein were undisputedly the attorneys for Mrs. Dickson in the divorce action. This contention also is without merit.

On the issue of limitations, appellant further argues that the filing by Fagan Dickson of his "Petition to Perpetuate Testimony" on July 9, 1976, acted to toll the statute of limitations, although it admits there is no authority for such a proposition. This contention was rejected by the court in *Womack Machine Supply Co. of Houston v. Fannin Bank*, 499 S.W.2d 917, 920 (Tex.Civ. App.—Houston [14th Dist.] 1973), reversed on other grounds, 504 S.W.2d 827 (Tex. 1974). As that court held, so we also hold that "We are unaware of any authority for the position that such an ancillary matter may toll limitations and hold, therefore, that the two-year period of limitation was not tolled until the filing of the plaintiff's original petition . . . ."

The summary judgment proof establishes here as a matter of law that there is no genuine issue of fact as to the question of limitations. The amended pleading filed in the divorce suit shows conclusively that Fagan Dickson was aware of his alleged right of action asserted here more than two years prior to the initiation of this action. It is therefore barred by limitations. Article 5526, supra; *Weaver v. Witt*, supra.

Of the six causes of action pleaded in the trial court in this case by appellant, the third and fifth causes of action, those for intentional interference with Dickson's and his wife's marital and business relationships and for alienation of his wife's affection, are directly controlled by the preceding discussion. We will now discuss the effect of limitations on the other causes of action pleaded.

Appellant purports to state as its first cause of action the alleged breach by appellees of their duty to represent Fagan Dickson in an ethical manner. The petition alleges violations of the following Disciplinary Rules of the Code of Professional Responsibility, enacted as Section 8 of Article XII of the Rules Governing the State Bar of Texas (appendix to Title 14 of the Revised Civil Statutes): DR 4–101, Preservation of Confidences and Secrets of a Client; DR 5–101, Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment; DR 5–105, Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer; and DR 7–102, Representing a Client Within the Bounds of the Law. These rules, appellant argues, were violated by appellees' alleged actions in using Fagan Dickson's confidences and secrets to his disadvantage, in accepting employment in litigation when they knew or should have known that they would be witnesses therein, in continuing to represent Fagan Dickson after the conflict developed between the Dicksons, and in making false statements of fact about Dickson.

Although appellees have questioned the existence of a cause of action based upon alleged violations of disciplinary rules, urging that such violations give rise only to disciplinary action under the rules of and by the State Bar of Texas and not to civil liability, appellant disputes this and claims appellees are guilty of negligence per se in violating such rules. We may assume, without deciding, that the allegations of appellant's petition state a cause of action for legal malpractice, whether it be stated in terms of intentional violations of disciplinary rules, negligence, or negligence per se. Whichever label is placed on it, it is in the nature of a tort action and thus the two-year statute of limitations applies. Art. 5526, V.T.C.S.; *Gaddis v. Smith*, supra; *Bell v. Bell*, 434 S.W.2d 699, 701 (Tex.Civ. App.—Beaumont 1968, writ ref'd n. r. e.).

The second cause of action pleaded was that appellees failed to discharge their duty to exercise the degree of skill and learning ordinarily exercised and possessed by other attorneys in Austin, Texas, under the same circumstances. Though somewhat inartfully worded, this allegation may be assumed to state a cause of action for negligent malpractice. An action for negligence accrues at the time of the act or omission which constitutes negligence, *Robertson v. Texas & New Orleans Railroad Co.*, 122 S.W.2d 1098, 1099–1100 (Tex.Civ. App.—San Antonio 1938, writ refused), and the two-year statute of limitations applies.

Appellant's petition purports to state a fourth cause of action for appellees' breach of implied warranties pursuant to the contract allegedly made between them and Fagan Dickson. The petition states that appellees impliedly warranted that the services and information they would provide Dickson would be "accurate, knowledgeable, and would reflect the true, correct, state of the law;" that they would comply with the terms of their contract with Dickson and "honor his attorney-client privilege;" and that they would "respect and abide by all those terms and conditions inherent in a fiduciary relationship such as that existing between [Dickson] and [appellees]." The petition then alleges breaches of the alleged contract by appellees in that

they failed to perform their obligations thereunder; they failed to deliver accurate advice and services; they deliberately misrepresented law and fact, "thereby violating their fiduciary obligations to [Dickson];" and they divulged Dickson's confidences. Although couched in terms of a contract cause of action, these allegations basically do no more than reiterate the previously mentioned causes of action for negligence, misrepresentation, and fraud and deceit, with the addition of a cause of action for breach of fiduciary duty. This fourth cause of action, as do all of the first five, sounds in tort, not contract, and thus the two-year limitations period is applicable. *Bell v. Bell*, supra. Appellant itself states in its brief, "It should be remembered that this is essentially a cause of action [i. e., suit] against the [appellees'] interfering with the marital and business relationship between [Fagan Dickson] and his ex-wife in a manner forbidden by the Code of Professional Conduct." Even if this is considered a cause of action in contract, however, it is not alleged that the contract was written. It is well settled that a cause of action for breach of implied warranty based upon an oral contract is governed by the two-year statute of limitations. *Certain-Teed Products Corp. v. Bell*, 422 S.W.2d 719, 720 (Tex. 1968); Art. 5526, V.T.C.S. In any event, therefore, the applicable limitations period is two years.

The question as to the applicability of the two-year bar of limitations to these first, second and fourth causes of action turns on the time when appellees' representation, if any, of Fagan Dickson terminated. It will be assumed for our purposes that they did represent Dickson as well as his wife, a matter disputed by appellees.

Appellant argues that Mr. and Mrs. Dickson retained the appellee law firm (then Clark, Thomas, Harris, Denius & Winters) in August 1971. Appellees' summary judgment proof contains an affidavit by Roberta Crenshaw, formerly Mrs. Dickson, which states that appellees represented her in estate planning and other property matters until April 1972, then represented her in

connection with a land transaction which ended in January 1973. She states, "After that time, the Clark, Thomas law firm never represented Mr. Dickson, directly or indirectly. Sander W. Shapiro of the Clark, Thomas, Winters & Shapiro firm began representing me again when I decided to seek a divorce from Mr. Dickson in early 1974." There is also an affidavit by Steve Pena, an accountant, who states that he performed accounting services for the Dicksons and that "I was present with Fagan Dickson in the law offices of Clark, Thomas, Winters & Shapiro early in 1972 when, following a heated discussion with Frank Ikard of that firm, Fagan Dickson unequivocally fired the law firm insofar as it may have represented him." The affidavit of John Anderson, an accountant, states, "The records [of Dickson Properties, Inc.] do not contain any memorandum or record to the effect that the Clark, Thomas, Winters & Shapiro law firm represented Mr. Dickson or any entity in which he had an interest after January, 1973." These statements are never directly contradicted by any documents before the court at the time summary judgment was rendered. See 4 McDonald's Texas Civil Practice sec. 17.26.8, supra.

Again, since appellant chose not to include any controverting affidavits in its response to the motion for summary judgment, only Fagan Dickson's deposition is available to contradict appellees' affidavits. Appellant, in said response and in its brief here, points out several portions of the deposition, but the only one which directly bears on the question at issue is the response to the question, "Did any communication from Mr. Ikard or Mr. Shapiro or any other member of the Clark-Thomas firm reach you in which they told you that they were no longer representing you?" Fagan Dickson replied, "He [Frank N. Ikard, Jr.] did not make any communication to me and never has that he was not representing me. And Mr. Shapiro has never made a representation to me that he was not—wasn't representing me."

All other references in the deposition and its exhibits to the times at which appellees

performed legal services for deponent Fagan Dickson predate March 3, 1975, the date two years prior to the filing of the petition in this case. Significantly, at one point in the deposition, during the cross-examination, Dickson states, "She [Roberta Dickson] sued me for divorce . . . . But they [the Clark-Thomas firm] brought the suit . . . . And they *had been* my attorneys." [Emphasis added.] It is clear from all the summary judgment proof and other matters properly before the trial court that appellees, by the time they began representing Mrs. Dickson in the divorce suit in early 1974 (the petition for divorce was filed April 8, 1974), no longer represented Dickson.

The first, second and fourth causes of action, assuming they are viable ones in all other respects, which we do not decide, are barred by the two-year statute of limitations. Art. 5526, supra.

Appellant's sixth cause of action is for alleged defamation by appellees Shapiro and Ikard acting in behalf of appellee law firm in making the allegedly false, wilful and malicious communications about Fagan Dickson to his wife. The applicable statutory limitations period for actions "for injuries done to the character or reputation of another by libel or slander" is one year. Art. 5524, V.T.C.S. This period begins to run from the date when the injured party learns of, or in the exercise of reasonable diligence should have learned of, the wrong giving rise to the cause of action. *Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex.1976); *Armstrong v. Morgan*, 545 S.W.2d 45, 47 (Tex.Civ.App.—Texarkana 1976, no writ). Fagan Dickson admits learning of the allegedly defamatory communications by April 1, 1975, the date on which Frank Ikard began testifying in the divorce suit. Unquestionably, then, this sixth cause of action (assuming it is valid in all other respects) on which suit was not brought until the petition herein was filed on March 3, 1977, is barred by the statute applicable thereto. Art. 5524, supra.

Appellant's point of error one is overruled.

Appellant's second, third, fifth and sixth points of error complain that the trial court erred in granting summary judgment if such were based upon collateral estoppel or res judicata, waiver, testimonial privilege, and failure to state a cause of action. In view of our disposition of appellant's first point of error, it is unnecessary to examine its second, third, fifth and sixth points of error for further bases upon which the trial court could have predicated its summary judgment.

In its fourth point of error, appellant asserts that the trial court erred in failing to grant a new trial or to set aside the summary judgment upon presentation of a new affidavit by appellant which contradicted part of appellees' summary judgment proof. The new one related to two affidavits attached to appellees' motion for summary judgment by Donald Thomas, a member of the appellee law firm, and Arthur Mitchell, an attorney who represented Fagan Dickson at the divorce trial. Those two affidavits concerned conversations between the two affiants during the course of the divorce suit relative to whether the appellee law firm should withdraw from representation of Mrs. Dickson therein. The new affidavit, by Mitchell, contradicted his original one in which he had concluded that there was no need for a withdrawal by appellees. The new affidavit, therefore, did not relate to the issue of limitations, upon which we have disposed of the first point of error. Thus, even if the trial court erred as contended in this fourth point of error, such error was harmless. Rule 434, T.R.C.P. Appellant's fourth point is overruled.

The pleadings, deposition, affidavits, and other summary judgment proof, on file at the time of the hearing on the motion for summary judgment, show that the moving party was entitled to judgment as a matter of law on the basis that all of the nonmoving party's pleaded causes of action are barred by limitations. Accordingly, the judgment of the trial court is affirmed.