Gladys R. **GOFFNEY**, Appellant,

v.

Sylvia **RABSON**, Appellee.

No. 14–99–00327–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 12, 2001.

Rehearing Overruled Oct. 25, 2001.

---

Alice Oliver–Parrott, Maria Teresa Arquindegui, Houston, for appellants.

H. Victor Thomas, Houston, for appellees.

Panel consists of Justices YATES, WITTIG,\* and FROST.

## OPINION

YATES, Justice.

Appellant, Gladys R. Goffney, appeals the trial court's judgment entered in favor of appellee, Sylvia Rabson. Rabson initially sued Goffney for legal malpractice, breach of contract, Deceptive Trade Practices Act–Consumer Protection Act ("DTPA") violations, and breach of fiduciary duty in connection with Goffney's representation of her in an underlying lawsuit involving a will contest. Prior to trial, Rabson dropped her legal malpractice claim against Goffney and proceeded to trial on her remaining claims. The jury found in favor of Rabson on her breach of contract, DTPA, and breach of fiduciary duty claims. Because we find Rabson's breach of contract, DTPA, and breach of fiduciary duty claims are in the nature of a tort action for legal malpractice, which was abandoned prior to trial, we reverse the judgment of the trial court and render judgment that Rabson take nothing on her claims against Goffney.

## I. BACKGROUND

Between 1980 and 1991, Rabson and her sons, William Rabson and Robert Rabson, had been engaged in a dispute over the estate of Rabson's mother, Heidi Jenny. In 1991, Rabson filed suit to probate a 1985 will executed by Jenny and to set aside a 1990 will executed by Jenny in favor of William and Robert on the basis of undue influence (the "estate lawsuit"). Rabson originally hired Doug Clarke of Andrews & Kurth to represent her in the estate lawsuit. Clarke's fees became too expensive for Rabson, and in April 1992, Rabson hired John Schnellbacher, on a contingency fee basis, to replace Clarke. Schnellbacher brought Goffney in to work on the estate lawsuit. On May 15, 1992, Schnellbacher and Rabson signed a contingency fee agreement. Goffney did not sign the agreement, but her name was interlineated in the agreement. At trial, it was disputed whether Goffney was present at the May 15, 1992 meeting when Schnellbacher and Rabson signed the agreement.

The estate lawsuit had a July 26, 1993 trial setting. On the previous Friday, July 23, 1993, Schnellbacher told Rabson he would not be able to appear at trial because of a heart condition. Goffney claims Rabson agreed with her that she could not proceed alone as trial counsel. Goffney testified that she was not familiar with all the documents produced in the estate lawsuit, but, instead, Schnellbacher was responsible for preparing and organizing the trial exhibits and for assisting her with the exhibits at trial. Efforts were begun to contact an attorney who could appear in court on the following Monday and assist Goffney in obtaining a continuance. Goffney contacted another attorney, Aston Rice, who agreed to appear in court with Goffney to argue for a continuance. Rice agreed to take over as lead counsel only if the trial court granted a continuance. On Monday, July 26, 1993, Goffney announced not ready when the case was called to trial and sought a continuance. Goffney told

\* Senior Justice Don Wittig sitting by assignment.

the trial court she did not have a contract with Rabson. The trial court refused to grant a continuance and informed the parties that jury selection would commence that afternoon. The trial court told Rabson if she wanted another attorney, to produce one and a one-week continuance would be granted.

Rabson claims that when the court recessed for lunch and Goffney started to leave the courtroom, she pleaded with Goffney to stay and help her, but Goffney, instead, told Rabson that she did not know what she was going to do and left the courtroom. Rabson asserts that she did not know where Goffney was going, or if Goffney was going to return at all. Rabson remained at the courthouse and contacted other attorneys to represent her. Goffney testified that she returned to her office to prepare to re-urge the request for a continuance. Goffney also maintains that Rabson was not "alone," but, rather, Rabson telephoned Goffney at her office to tell Goffney that she had contacted Doug Clarke, who agreed to appear in court and argue for a continuance.

The trial court offered Clarke a one-week continuance, which Clarke refused. After another recess, Wayne Harpold of Looper, Reed, Mark & McGraw appeared on behalf of Rabson and requested a continuance, but the trial court informed Harpold that the trial would commence in one week. Goffney arrived with a motion to withdraw as counsel, believing it would help another attorney in obtaining a continuance. The trial court, however, refused to allow Goffney to withdraw from the case. Rabson hired Harpold and his firm on an hourly rate basis. Goffney assisted Harpold at trial.

On August 18, 1993, the jury awarded Rabson's sons and Jenny's estate $750,000 on their claims against Rabson for interference with the right of inheritance, intentional infliction of emotional distress, and attorney's fees.[1] On August 30, 1993, Rabson filed for bankruptcy. On November 18, 1993, the trial court entered a final judgment, from which Rabson appealed. On August 10, 1995, determining that the trial court had erred in refusing to grant Rabson's request for a jury of twelve, this court reversed and remanded the case for a new trial. *See Rabson v. Rabson,* 906 S.W.2d 561, 563 (Tex.App.—Houston [14th Dist.] 1995, writ denied).

On August 18, 1995, Rabson filed the current lawsuit against Goffney, alleging legal malpractice in the handling of the underlying estate lawsuit.[2] Rabson also raised claims for breach of contract and DTPA violations. Rabson and her sons entered into a settlement agreement of the underlying estate lawsuit, and on November 9, 1997, a final judgment was entered in that case. Rabson subsequently abandoned her legal malpractice claim in her Fifth Amended Original Petition, and added a claim for breach of fiduciary duty. The parties proceeded to trial on Rabson's breach of contract, DTPA, and breach of fiduciary duty claims.

The jury found in favor of Rabson on her: (1) breach of contract claim and awarded her $125,000 in damages for attorney's fees incurred in the underlying estate lawsuit, (2) DTPA claim and awarded her $100,000 in mental anguish damages and $10,000 in damages on the jury's finding that Goffney's conduct was committed "knowingly," and (3) breach of fiduciary duty claim and awarded her $60,000 in

---

1. The jury further found Rabson had not prosecuted the will contest in good faith and with just cause.

2. Rabson also sued Schnellbacher. Schnellbacher settled with Rabson for $15,000, and is not a party to this appeal.

damages for mental anguish and attorney's fees incurred in the underlying estate lawsuit. The jury also award Rabson $65,000 in attorney's fees. The trial court's judgment awarded Rabson $225,000 in actual damages, $10,000 in additional damages under the DTPA, $71,082.24 in prejudgment interest, and $65,000 in attorney's fees.[3]

On appeal, Goffney contends: (1) Rabson lacked standing to bring this lawsuit, (2) the trial court lacked subject matter jurisdiction, (3) Rabson was judicially estopped from asserting any claims against her, (4) Rabson's breach of contract, DTPA, and breach of fiduciary duty claims are in the nature of a claim for legal malpractice, which was abandoned prior to trial, (5) Rabson's claims were barred by the statute of limitations, and (6) the evidence is legally and factually insufficient to support the jury's findings and awards on Rabson's breach of contract, DTPA, and breach of fiduciary duty claims. Because we find that Goffney's contention that Rabson's breach of contract, DTPA, and breach of fiduciary duty claims are merely a restated legal malpractice claim is dispositive of this appeal, we shall address it first.

## II. Dividing Legal Malpractice Claim

Goffney contends Rabson's breach of contract, breach of fiduciary duty, and DTPA claims are essentially legal malpractice claims. Therefore, according to Goffney, because Rabson abandoned her legal malpractice claim prior to trial, Rabson no longer had a viable cause of action upon which to recover. We agree.

 Legal malpractice is not the only cause of action under which a client can recover from her attorney. *Kahlig v. Boyd,* 980 S.W.2d 685, 688 (Tex.App.—San Antonio 1998, pet. denied). Texas law, however, does not permit a plaintiff to divide or fracture her legal malpractice claims into additional causes of action. *See, e.g., Greathouse v. McConnell,* 982 S.W.2d 165, 172 (Tex.App.—Houston [1st Dist.] 1998, pet. denied); *Kahlig,* 980 S.W.2d at 688–91; *Smith v. Heard,* 980 S.W.2d 693, 697 (Tex.App.—San Antonio 1998, pet. denied); *Rodriguez v. Klein,* 960 S.W.2d 179, 184 (Tex.App.—Corpus Christi 1997, no pet.); *American Med. Elecs., Inc. v. Korn,* 819 S.W.2d 573, 576 (Tex.App.—Dallas 1991, writ denied); *Judwin Props., Inc. v. Griggs & Harrison,* 911 S.W.2d 498, 506 (Tex.App.—Houston [1st Dist.] 1995, no writ); *Bray v. Jordan,* 796 S.W.2d 296, 298 (Tex.App.—El Paso 1990, no writ). The issue in a legal malpractice action is whether the attorney exercised that degree of care, skill, and diligence as lawyers of ordinary skill and knowledge commonly possess and exercise. *Sullivan v. Bickel & Brewer,* 943 S.W.2d 477, 481 (Tex.App.—Dallas 1995, writ denied).

 In her Eighth Amended Original Petition, Rabson generally alleges the following conduct by Goffney: (1) Goffney did not properly prepare the estate lawsuit for trial; (2) Goffney failed to respond to special exceptions, which pointed out defects in Rabson's pleadings; and (3) Goffney failed to provide timely supplemental answers to interrogatories, thereby precluding Rabson from calling crucial witnesses. Because Rabson abandoned her legal malpractice claim prior to trial, she may not recover on other causes of actions which amount to no more than restated claims for legal malpractice. *See Kahlig,*

---

3. The trial court disregarded the jury's award of $60,000 in damages for mental anguish and attorney's fees in the underlying estate lawsuit on Rabson's breach of fiduciary duty claim to avoid a duplicative award.

980 S.W.2d at 689 (finding judgment notwithstanding the verdict was proper on claim for fraud against attorney because acts and omissions about which plaintiff complained fell within ambit of claim for legal malpractice—a legal theory abandoned at trial).

### A. Breach of Contract

Specifically, with respect to her breach of contract claim, Rabson alleges that Goffney "did not fulfill the terms of their contract and abandoned Mrs. Rabson on the day of trial." Rabson maintains her breach of contract claim is not based on Goffney's negligence or failure to provide adequate legal representation, but, instead, is based on Goffney's failure to perform their contract by refusing to prepare for trial and by abandoning Rabson on the day of trial.

■ We disagree with Rabson's characterization of her breach of contract claim. Instead, we find Rabson's claim that Goffney "abandoned" her on the day of trial is essentially a legal malpractice claim, i.e., a breach of Goffney's duty to represent Rabson, not a breach of their contract. *See, e.g., Van Polen v. Wisch,* 23 S.W.3d 510, 515 (Tex.App.—Houston [1st Dist.] 2000, pet. denied) (holding plaintiff's claim for breach of contract, which was based on attorney's failure to appear at hearing on motion to adjudicate, was in nature of tort, i.e., attorney's breach of duty to represent client); *Black v. Wills,* 758 S.W.2d 809, 814

(Tex.App.—Dallas 1988, no writ) (holding plaintiff's cause of action for breach of contract, which was based on attorney's failure to appear at trial, was in nature of tort, no matter how plaintiff labeled claim); *Citizens State Bank v. Shapiro,* 575 S.W.2d 375, 386–87 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.) (holding allegation that attorneys failed to perform obligations under contract amounted to tort action for legal malpractice).[4]

Moreover, a review of the trial record reveals that most, if not all, of the evidence presented by Rabson related to Goffney's adequacy and competency in her representation of Rabson. Indeed, the trial court, in overruling Goffney's objection that what occurred in the estate lawsuit was not relevant to the current lawsuit, stated, "since it's a breach of contract case for attorney's fees, ... much of the same testimony and evidence in this case would be the same as it is in a malpractice [case]." For example, Frank Davis, an attorney testifying as an expert on behalf of Rabson, opined that Goffney did not do an adequate job in her representation of Rabson and that she breached their contract by failing to represent Rabson properly.

■ Rabson further contends the fact that she has asserted a breach of contract claim, not a legal malpractice claim, is supported by the type of damages she has sought. Rabson points out that she did not seek legal malpractice damages, i.e.,

4. The First Court of Appeals has indicated that breach of contract actions against attorneys are limited to claims for excessive fees for legal services rendered. *See Jampole v. Matthews,* 857 S.W.2d 57, 62 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (distinguishing cause of action for legal malpractice from cause of action for breach of contract relating to excessive legal fees); *see also Greathouse,* 982 S.W.2d at 172 n. 2 (recognizing limited distinction between breach of contract claim for excessive legal fees and claim

for legal malpractice); *Klein v. Reynolds, Cunningham, Peterson & Cordell,* 923 S.W.2d 45, 49 (Tex.App.—Houston [1st Dist.] 1995, no writ) (opinion on reh'g) (same); *Judwin Props., Inc.,* 911 S.W.2d at 506 (same). This case does not fall within the exception set forth in those opinions. However, because that issue is not before this court, we express no opinion on whether breach of contract actions against attorneys are limited to claims for excessive fees and we need not address it.

the amount she would have recovered but for the negligence of her attorney, but, instead, she seeks as damages the attorney's fees she paid to her additional trial counsel. This argument is not persuasive. The type of damages Rabson seeks does not change the fact that her complaint concerns Goffney's breach of the duty to represent her. *See Van Polen,* 23 S.W.3d at 515. Indeed, in her superseded petitions, in which Rabson had expressly alleged a claim for legal malpractice, the only damages Rabson sought for her legal malpractice claim were the attorney's fees paid to her additional trial counsel; Rabson asserted no damages for the amount she would have recovered but for Goffney's negligence.

Under these facts, we conclude Rabson's claim that Goffney breached their contract by abandoning her on the day of trial is nothing more than a legal malpractice claim—a claim she abandoned prior to trial. Rabson, therefore, cannot recover on her breach of contract claim. *See Kahlig,* 980 S.W.2d at 689.

### B. DTPA

With respect to her DTPA claim, Rabson alleges that Goffney violated section 17.46 of the DTPA by: (1) representing to Rabson that the services she was providing were of a particular grade or quality when they were of another; (2) representing that the agreement to represent Rabson conferred or involved rights, remedies or obligations which it did not have or involve; and (3) failing to disclose information concerning her representation of Rabson, which was known to Goffney at the time she entered into the contract with Rabson, and the failure to disclose such information was intended to induce Rabson to enter into a contract which she would not have entered into had that information been disclosed. TEX.BUS. & COM.CODE ANN.

§ 17.46 (Vernon Supp.2001). Rabson further alleges Goffney engaged in an unconscionable action or course of action in violation of section 17.50 of the DTPA by: (1) refusing to represent, and abandoning, Rabson at trial; (2) misleading Rabson into believing that she and Schnellbacher had prepared the case for trial in a good and workmanlike manner; and (3) failing to properly, timely, and adequately prepare for trial and misrepresenting the fact that they were unprepared or unqualified to try the case. TEX.BUS. & COM.CODE ANN. § 17.50 (Vernon Supp.2001).

Rabson contends that because her DTPA claim is based on Goffney's refusal to perform her contract with Rabson and Goffney's attempted withdrawal prior to Rabson's hiring of new trial counsel, it is not related to the quality of Goffney's representation of her and, therefore, is not couched in terms of legal malpractice. We disagree. As with her "breach of contract" claim, Rabson's assertion that Goffney's abandonment of her on the day of trial constitutes a violation of the DTPA is merely a legal malpractice claim; it does not matter that Rabson labels it as a violation of the DTPA. *Cf. Van Polen,* 23 S.W.3d at 515; *Black,* 758 S.W.2d at 814; *Citizens State Bank,* 575 S.W.2d at 386–87. Moreover, Rabson's other allegations concerning Goffney's misrepresentations regarding the quality of her representation of Rabson are also restated claims for legal malpractice. *See Greathouse,* 982 S.W.2d at 172 (holding plaintiff's DTPA claims that attorney represented legal services were of competent quality when they were not, represented that attorney-client relationship conferred certain rights, remedies, or obligations that it did not have, and engaged in unconscionable course of conduct that took advantage of plaintiff's lack of knowledge and experience such that there existed gross disparity between

value of legal services received and consideration paid to attorney for services were merely allegations of legal malpractice).

■ Rabson, however, further argues Goffney's abandonment of her on the day of trial constitutes an unconscionable action under the Texas Supreme Court's decision in *Latham v. Castillo*, which recognizes that an attorney can be found to have engaged in unconscionable conduct in the manner in which she represents a client. *Latham v. Castillo*, 972 S.W.2d 66, 68 (Tex.1998). In *Latham*, the plaintiffs alleged their attorney had represented to them that he had filed a medical malpractice action prior to the running of the two-year statute of limitations when, in fact, he had not. *Id.* at 67–68. The *Latham* court found that recasting the plaintiffs' DTPA claim as a legal malpractice claim on those facts would subvert the Legislature's purpose in enacting the DTPA, i.e., to deter deceptive business practices. *Id.* at 69. The *Latham* court distinguished between a claim that the attorney negligently failed to file a lawsuit from a claim of an affirmative misrepresentation by the attorney that a claim had been filed. The court further explained:

> If the Castillos had only alleged that Latham negligently failed to timely file their claim, their claim would properly be one for legal malpractice. However, the Castillos alleged and presented some evidence that Latham affirmatively misrepresented to them that he had filed and was actively prosecuting their claim. *It is the difference between negligent conduct and deceptive conduct.* To recast this claim as one for legal malpractice is to ignore this distinction.

*Id.* (emphasis added). Here, we cannot say that Rabson's allegations of unconscionable conduct constitute the type of de-

ceptive conduct, which the *Latham* court distinguished from negligent conduct, to support a cause of action under the DTPA, independent of a cause of action for legal malpractice. Hence, Rabson cannot recover on her DTPA claim. *See Kahlig*, 980 S.W.2d at 689.

### C. Breach of Fiduciary Duty

■ In support of her breach of fiduciary duty claim, Rabson raises the same allegations as in her breach of contract and DTPA claims, i.e., that Goffney abandoned her at trial, did not properly prepare the estate lawsuit for trial, and misled Rabson into believing the case had been properly prepared for trial. A fiduciary relationship exists between attorneys and clients as a matter of law. *Arce v. Burrow*, 958 S.W.2d 239, 246 (Tex.App.— Houston, [14th Dist.] 1997) (opinion on reh'g), *aff'd as modified*, 997 S.W.2d 229 (Tex.1999). The term fiduciary " 'refers to integrity and fidelity.' " *Id.* (quoting *Kinzbach Tool Co. v. Corbett–Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 512 (1942)). Therefore, the attorney-client relationship is one of "most abundant good faith," requiring absolute perfect candor, openness and honesty, and the absence of any concealment or deception. *Perez v. Kirk & Carrigan*, 822 S.W.2d 261, 263–66 (Tex. App.—Corpus Christi 1991, writ denied) (citing *Hefner v. State*, 735 S.W.2d 608, 624 (Tex.App.—Dallas 1987, pet. ref'd)). Breach of fiduciary duty by an attorney most often involves the attorney's failure to disclose conflicts of interest, failure to deliver funds belonging to the client, placing personal interests over the client's interests, improper use of client confidences, taking advantage of the client's trust, engaging in self-dealing, and making misrepresentations.[5]

---

5. *See, e.g., Jackson Law Office, P.C. v. Chap-* *pell*, 37 S.W.3d 15, 22–23 (Tex.App.—Tyler

■ As considered above, Rabson's allegations in support of her breach of fiduciary duty claim constitute no more than a claim for legal malpractice. *Cf. Van Polen*, 23 S.W.3d at 515; *Greathouse*, 982 S.W.2d at 172; *Black*, 758 S.W.2d at 814. Moreover, these allegations do not amount to self-dealing, deception, or misrepresentations in Goffney's legal representation of Rabson to support a separate cause of action for breach of fiduciary duty. *See Judwin Properties, Inc.*, 911 S.W.2d at 506 (finding no evidence to indicate unfairness or deception in attorneys' use of confidential information to support claim for breach of fiduciary duty, but instead, found allegation of disclosure of confidential information was merely claim for legal malpractice). Rabson, however, asserts the jury could infer from Goffney's denial of her contract with Rabson and attempt to withdraw as Rabson's trial counsel that Goffney believed it was not in her "economic interest to try a case on a contingency fee basis she believed she was going to lose." The record contains no evidence to support such an inference. Because Rabson's breach of fiduciary duty claim is actually a claim for legal malpractice, which Rabson abandoned prior to trial, she may not recover for breach of fiduciary duty. *See Kahlig*, 980 S.W.2d at 689.

### III. CONCLUSION

Because we have determined that Rabson cannot recover on her breach of contract, DTPA, and breach of fiduciary duty claims, it is not necessary to address Goffney's remaining issues. Accordingly, we reverse the judgment of the trial court and render judgment that Rabson take nothing on her claims against Goffney.

WITTIG, J., concurring in result only.

DON WITTIG, Senior Justice, concurring on motion for rehearing.

I concur in the court's refusal to grant a rehearing.

However, we should not be read to say that we deny Texas citizens the right to enforce a contingent fee contract with an attorney. Enforcement of a contingent fee contract may be obtained by both the attorney and her client.

Our original opinion, in which I concurred in the result only, implicitly dealt with enforceability of this special type of contract. The majority opinion lumps the contingent fee aspect of the underlying contract in with standing case law applying the two year statute of limitations to legal

2000, pet. denied) (finding evidence that attorneys did not reduce fee agreement to writing, failed to record services rendered, failed to provide billing statements, refused to provide client with itemized statement, inflated hours charged during representation, and required client to execute assignment of properties without disclosure of legal effects of assignment, supported claim for breach of fiduciary duty); *Cantu v. Butron*, 921 S.W.2d 344, 349–50 (Tex.App.—Corpus Christi 1996, writ denied) (determining evidence that attorney represented to clients that he would accept lower percentage fee arrangement, never sent to client copies of contracts they had signed, had deceptively obtained clients' signatures on subsequent contracts raising attorney's percentage fee without explaining that subsequent contracts altered original fee arrangement supported breach of fiduciary duty claim); *Perez*, 822 S.W.2d at 263–66 (finding evidence that attorneys for employer informed employee that they also represented him and that any statements he made would be kept confidential raised fact issue precluding summary judgment on claim for breach of fiduciary duty when attorneys later wrongfully disclosed employee's privileged statements to district attorney); *Avila v. Havana Painting Co.*, 761 S.W.2d 398, 399–400 (Tex. App.—Houston [14th Dist.] 1988, writ denied) (holding evidence that an attorney failed to turn over settlement funds received on behalf of client supported claim for breach of fiduciary duty).

malpractice. Legal malpractice actions, whether based on negligence or failure to perform some legal representation aspect of a contract, often sound in tort. We failed to distinguish one of Rabson's claims, which specifically sounded in contract.

Mrs. Rabson specifically pled in her amended petition paragraph 35 that she contracted with Goffney to provide legal services. Because Goffney did not perform "the terms of their contract" and "abandoned" her on the day of trial, she was forced to hire another firm, she claimed. The terms of their contract specifically provided for a contingent fee, not an hourly rate.

In paragraph 36, Rabson alleged Goffney's failure to perform was a breach of contract "and because Mrs. Rabson was forced to hire additional attorneys, she has been damaged...." The damages found by the jury were the amount Rabson had to pay the additional attorneys. The majority opinion observes Rabson claimed no damages she would have recovered but for the negligence. The opposite is more likely. The particular claim Rabson asserted that would give rise to the specific damages awarded, was the contract claim. The only damage amount sought, proven and found by the jury was the amount Rabson was forced to pay, not because of negligence, but because Goffney failed to perform the terms of the contract, to represent Rabson on a contingent fee basis. When Goffney undoubtedly attempted to abandon Rabson on the eve of trial and attempted an *ex parte* withdrawal from the case, Rabson elected to hire new lawyers, not on a contingent fee basis, but on an hourly rate that arguably caused the damages of $125,000. Indeed, the jury agreed. They found a failure to perform the contingent fee contract and the precise damages

caused by the failure—the cost of new counsel paid on an hourly basis.

We cited by way of example *Van Polen v. Wisch*, 23 S.W.3d 510 (Tex.App.—Houston [1st Dist.] 2000, pet. denied). There, our sister court dealt not with a contingent fee contract but a contract for criminal representation. Hinojosa's conviction was upheld on appeal and thus his own conduct was the sole proximate cause of his damages. *See Peeler v. Hughes & Luce*, 909 S.W.2d 494, 498 (Tex.1995). His suit on the contract "action[s] sounds in tort, even if the suit is framed as a breach of contract...." *Van Polen*, 23 S.W.3d at 515–16. Hinojosa was not allowed to escape the negligence law principle that does not allow a convicted criminal to blame his attorney for his just punishment. That is not the case of Sylvia Rabson.

We cited *Black* and *Shapiro*. In *Black v. Wills*, 758 S.W.2d 809 (Tex.App.—Dallas 1988, no writ), the Dallas court of appeals (following *Shapiro*) applied the two year statute of limitations to legal malpractice claims because: "[a]lthough couched in terms of a contract cause of action, these allegations basically do no more that reiterate the previously mentioned causes of action for ... breach of fiduciary duty." *Id.* at 814. They concluded the cause of action sounded in tort and therefore the limitation period was two years. In *Citizens State Bank of Dickinson v. Shapiro*, 575 S.W.2d 375 (Tex.App.—Tyler 1979, writ ref'd n.r.e.), the Tyler court had already stated the same logic: "[a]lthough couched in terms of a contract cause of action, these allegations basically do no more than reiterate the previously mentioned causes of action for negligence...." *Id.* at 387. And so we too decided "Rabson's claim that Goffney 'abandoned' her on the day of trial is essentially a legal malpractice claim." This is problematic.

I agree narrowly that the so called "abandonment," that is the several hours in which Goffney sought to withdraw and was denied by the trial court, was—in this instance—lack of proper representation and therefore no more than a reiteration of Rabson's own abandoned claim of malpractice. From the contract perspective, however, the trial court promptly and properly refused this attempted repudiation of the contract. Goffney was forced by the trial court to honor her contract and indeed attended throughout the trial. There is no evidence this was not done on a contingent fee basis, as required under the contract. I would have preferred that we conduct a more traditional legal sufficiency analysis and then conclude Goffney substantially performed her contract. Goffney did after all lose, through no fault of her own, co-counsel who was principally charged with assimilating and presenting thousands of documents. When her aborted abandonment failed, she took her proper place with new trial counsel, however reluctantly, and assisted throughout the trial that ensued. The attempted abandonment fell short of a repudiation of the contract.

There should be no question the law recognizes that Rabson had a constitutionally protected right to contract. "There are certain fundamental rights of every citizen which are recognized in the organic law of all out free American States ... the right to acquire, possess, and protect property, includes the right to make reasonable contracts...." *Jordan v. State*, 51 Tex. Crim. 531, 103 S.W. 633, 634 (Tex.Crim. App.1907); *see also St. Louis Southwestern Ry. Co. v. Griffin*, 106 Tex. 477, 171 S.W. 703, 703–04 (Tex.1914) (destruction of liberty of contract violates Fourteenth Amendment). We cannot abridge the right of contract and deprive litigants of one of their greatest protections in dealing with an attorney, their contract. In this case, the trial court properly refused Goff-ney's attempt to abscond from both her professional and contractual duties.

Finally, the courts recognize, contrary to the exceptions we cited, *Van Polen, Black* and *Shapiro*, that generally failure to perform terms of a contract are a breach of contract, not a tort. *See Crim. Truck & Tractor v. Navistar*, 823 S.W.2d 591, 592 (Tex.1992). Here, in sum, the legal negligence claims were abandoned, leaving the breach of contract claims, which were not supported by legally competent evidence. Thus, my concurrence in the court's refusal to grant rehearing.