Affirmed in Part and Reversed and Remanded in Part and Majority and
Concurring and Dissenting Opinions filed June 24, 2008








 

Affirmed
in Part and Reversed and Remanded in Part and Majority and Concurring and Dissenting Opinions filed June 24,
2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00848-CV

____________

 

LENIETA WYLENE TROUSDALE, Appellant

 

V.

 

ANNETTE M. HENRY, R. CHRISTOPHER
BELL, AND BELL & HENRY, L.L.P., Appellees

 



 

On Appeal from the 129th
District Court

Harris County, Texas

Trial Court Cause No. 2005-81941

 



 

M A J O R I T Y   O P I N I O N








Lenieta Wylene Trousdale (ATrousdale@) appeals from the
trial court=s order granting summary judgment in favor of
appellees, Annette M. Henry, R. Christopher Bell, and Bell & Henry, L.L.P. 
In three issues, Trousdale contends the trial court erred in its grant of
summary judgment and its dismissal of her claims with prejudice, because (1)
certain of appellees= actions constitute a breach of fiduciary
duty, to which a four-year statute of limitations applies; (2) the
non-fracturing rule does not apply to the facts of this case, as claims for
breach of fiduciary duty are not limited to instances of self-dealing by
attorneys; and (3) the fraudulent concealment doctrine tolled the commencement
of the two-year statute of limitations on her legal malpractice claims until
August or September 2005, when appellees returned her file to her.

We conclude that the trial court erred in applying the
two-year statute of limitations to Trousdale=s breach of
fiduciary duty claims.  However, we also conclude that neither the discovery
rule nor the fraudulent concealment doctrine tolled the running of the statute
of limitations on Trousdale=s legal malpractice claims until August or
September 2005.  As a result of these holdings, we reverse that portion of the
trial court=s order granting summary judgment on Trousdale=s breach of
fiduciary duty claims and affirm the summary judgment as to the legal
malpractice claims.

Factual
and Procedural Background

Because we are reviewing a summary judgment, we present the
facts in the light most favorable to Trousdale, the non-movant. See
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex.
2003).  In October 1998, following the death of her father, Trousdale retained
Annette M. Henry (AHenry@), R. Christopher
Bell (ABell@), and their law
firm, Bell & Henry, L.L.P., to represent her and the estate of her father
in two lawsuits filed in Liberty County, Texas.  The first was a probate action
to have Trousdale appointed representative of her father=s estate (Athe probate action@).  The second was
a fraud and conversion action filed against Ellen Ayres, her half-sister, in
district court (Athe district court action@).  According to
the parties, the probate action was dismissed on September 27, 2002 for want of
prosecution, and the district court action was dismissed on October 16, 2002,
also for want of prosecution.








This appeal involves the manner and timing of Trousdale=s discovery that
these two lawsuits had been dismissed.  With respect to the probate action,
Trousdale alleges that Henry promised her in April 2001 that she would keep her
apprised of an upcoming hearing in the probate court.  After failing to receive
any notification regarding the lawsuit, Trousdale telephoned Henry in December
2002 to inquire as to its status.  However, instead of speaking directly with
Henry herself, Trousdale spoke with a member of Henry=s staff, who
informed her that she would have Henry return her telephone call.  When Henry
failed to do so, Trousdale called Henry=s office three
times.  During the second call, occurring sometime in January 2003, Henry
merely informed Trousdale, Awe missed it,@ without further
explanation as to whether it was a hearing that had been missed, or whether 
the probate action itself had been dismissed.  Trousdale then asked Henry to
reschedule the probate hearing, to which Henry did not respond.  Later that
month, Trousdale called Henry a third time and again asked Henry to reschedule
the probate hearing, whereupon Henry hung up on her.  In a later conversation,
Trousdale requested that Henry return her file.  Henry told her that her case
had been Asealed,@ and said that,
for this reason, she could obtain her file from neither her nor the Liberty
County courthouse.  Henry further informed Trousdale that she would need a
probate attorney to further pursue the matter.

With respect to the district court action, Trousdale
alleges that she never inquired, and was never informed, as to its status.  She
also claims that Henry never informed her that anything had been Amissed@ on the district
court action during their telephone conversations, much less that the district
court action had been dismissed.

In sum, Trousdale asserts that appellees never informed her
that either lawsuit had been dismissed.  As a result, she clams she did not
learn that either the probate action or the district court action had been
dismissed until August-September 2005, when appellees finally returned her file
to her.








On December 30, 2005, Trousdale sued appellees for legal
malpractice and breach of fiduciary duties.  She alleged that appellees (1)
failed to appear at trial settings in September and October of 2002, which
resulted in the dismissal of her claims for want of prosecution; (2) failed to
disclose to her that her claims were dismissed, after she had paid them for
their services and expenses; and (3) intentionally refused to return her files
to her until September 2005, to conceal the fact that her claims had been
dismissed and were time-barred.  Trousdale later amended her petition as
follows:  (1) adding a claim that appellees were negligent in their failure to
timely take any action to have her cases reinstated upon learning of their
dismissal; (2) adding a claim that the discovery rule and the fraudulent
concealment doctrine tolled the statute of limitations on her legal malpractice
claims until appellees returned her files in September 2005; and (3) stating
her legal malpractice and breach of fiduciary duty claims in separate sections.

Appellees filed a joint motion for summary judgment.
Stating that Trousdale=s sole claims of wrongdoing related to
missed hearing/trial settings, appellees contended that Trousdale=s claims amounted
to nothing more than a claim for legal malpractice, subject to a two-year
statute of limitations.  Appellees further asserted that neither the discovery
rule nor the fraudulent concealment doctrine tolled limitations until September
2005, as Trousdale admitted knowledge of and intent to sue on her cause of
action in June 2003.[1] 
Because they claimed limitations had run in June 2005, and Trousdale did not
file suit until December 2005, appellees sought dismissal of Trousdale=s claims with
prejudice.








In her response, Trousdale argued that she timely filed
suit against appellees.  She contended that her breach of fiduciary duty claims
were controlled by a four-year statute of limitations, making those claims
timely.  She acknowledged that her legal malpractice claims were governed by a
two-year statute of limitations, but asserted that the discovery rule and the
fraudulent concealment doctrine tolled the running of limitations on those
claims.  With respect to the former, Trousdale attached to her response an
affidavit in which she averred, AThe first time I
realized I had a risk of harm was in August or September 2005 when I saw this
in the file I had been given.@  In their reply, appellees objected that
Trousdale=s affidavit amounted to a Asham affidavit,@ because it
materially contradicted her sworn deposition testimony.  Appellees requested
that the trial court strike certain portions of the affidavit, including the
above-quoted statement.

The trial court granted appellee=s motion for
summary judgment, and ordered Trousdale=s claims dismissed
with prejudice.  In its order, the trial court further sustained appellees= objection to
Trousdale=s affidavit, and struck the statement, AThe first time I
realized I had a risk of harm was in August or September 2005 when I saw this
in the file I had been given,@ from the affidavit.  This appeal
followed.

Issues
on Appeal

In three issues, Trousdale contends that the trial court
erred in granting summary judgment in favor of appellees.  In her first issue,
Trousdale asserts that her claims for breach of fiduciary duties were timely
filed, as they are separate and independent from her claims for legal
malpractice, and subject to a four-year statute of limitations.  In her second
issue, she argues that the non-fracturing rule cannot be applied on the facts
of this case, as claims for breach of fiduciary duties are not limited solely
to instances of self-dealing by attorneys.  In her final issue, Trousdale
contends that she timely filed her legal malpractice claims, as the fraudulent
concealment doctrine tolled the running of limitations until appellees returned
her file in August-September 2005.  She further argues that the trial court
erred in sustaining appellee=s objection to her affidavit and striking
a statement from that affidavit.  We will address Trousdale=s first and second
issues together, because they are related.

Standard
of Review








We
review the trial court=s grant of summary judgment de novo. Joe v. Two Thirty
Nine Joint Venture, 145 S.W.3d 150, 156B57 (Tex. 2004). 
To prevail on a traditional motion for summary judgment, the movant must show
that there is no genuine issue as to any material fact and that it is entitled
to judgment as a matter of law. Tex. R.
Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546,
548 (Tex. 1985); Aguirre v. Vasquez, 225 S.W.3d 744, 750 (Tex. App.BBHouston [14th
Dist.] 2007, no pet.).  A defendant moving for summary judgment must
conclusively negate at least one essential element of each of the plaintiff=s causes of action
or conclusively establish each element of an affirmative defense. Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997); Shirvanian
v. DeFrates, 161 S.W.3d 102, 106 (Tex. App.BBHouston [14th
Dist.] 2004, pet. denied).  We take as true all evidence favorable to
the non-movant, and we indulge every reasonable inference and resolve any
doubts in the non-movant=s favor. Joe, 145 S.W.3d at 157;
Aguirre, 225 S.W.3d at 750.

Analysis
of Trousdale=s Issues

A.      The trial
court improperly granted summary judgment on Trousdale=s breach of
fiduciary duty claims.

1.       The
non-fracturing rule.








In her second issue, Trousdale contends that the
non-fracturing rule does not apply to this case.  She argues that the trial
court followed a more restrictive standard in evaluating her breach of
fiduciary duty claims than that announced by this Court in Goffney v. Rabson,
56 S.W.3d 186, 193B94 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied), and followed in our subsequent decisions. See
McMahan v. Greenwood, 108 S.W.3d 467, 495B96 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied); Deutsch v. Hoover, Bax & Slovacek, L.L.P.,
97 S.W.3d 179, 189B90 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  In contrast, appellees contend that the non-fracturing
rule was properly applied by the trial court below.  Appellees assert that
Trousdale=s claims amount to nothing more than a recast legal
malpractice claim, as they merely consist of allegations that appellees failed
to keep Trousdale adequately informed while she continued to pay them for their
legal services.  Appellees argue that this is not the law in Texas, and contend
that if such allegations are construed as claims for breach of fiduciary duty,
then any alleged malpractice could be turned into a breach of fiduciary duty
simply by paying one=s bills.  They further argue that
the focus of a claim for breach of fiduciary duty is whether an attorney
obtained an improper benefit from representing a client, and cite Kimleco
Petroleum, Inc. v. Morrison & Shelton, 91 S.W.3d 921, 923 (Tex. App.CFort Worth 2002,
pet. denied), and Aiken v. Hancock, 115 S.W.3d 26, 28 (Tex. App.CSan Antonio 2003,
pet. denied), for this proposition.

The rule against dividing or fracturing a negligence claim
prevents legal malpractice plaintiffs from opportunistically transforming a
claim that sounds only in negligence into other claims. Deutsch, 97
S.W.3d at 189 (citing Goffney, 56 S.W.3d at 188B94).  However,
this is not to say that clients can sue their attorneys only for negligence. Id.
 As this Court has explained before, analysis of claims in light of the
non-fracturing rule is analogous to determining whether claims are contract or
DTPA claims or whether they sound in contract or tort. Id. (citing Crawford
v. Ace Sign, Inc., 917 S.W.2d 12, 13B15 (Tex. 1996); Sw.
Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 493B95 (Tex. 1991)).

In a legal malpractice claim, a plaintiff must prove that
(1) the attorney owed the plaintiff a duty, (2) the duty was breached, (3) the
breach proximately caused the plaintiff=s injuries, and
(4) the plaintiff incurred damages. See McMahan, 108 S.W.3d at 495
(citing Peeler v. Hughes & Luce, 909 S.W.2d 494, 496 (Tex. 1995)). 
Attorneys may also be held liable for a breach of fiduciary duty, but such a
claim requires allegations of self-dealing, deception, or misrepresentations
that go beyond the mere negligence allegations in a malpractice action. Id.
(citing Goffney, 56 S.W.3d at 193B94).  If the gist
of a client=s complaint is that the attorney did not exercise that
degree of care, skill, or diligence as attorneys of ordinary skill and
knowledge commonly possess, then that complaint should be pursued as a
negligence claim, rather than some other claim. Deutsch, 97 S.W.3d at
189 (citing Goffney, 56 S.W.3d at 190B94).  If, however,
the client=s complaint is more appropriately classified as
another claim, for example, fraud, DTPA, breach of fiduciary duty, or breach of
contract, then the client can assert a claim other than negligence. Id.








This Court subscribes to the rule that a separate cause of
action for breach of fiduciary duty exists if the allegations in the petition
allege self-dealing, deception, or misrepresentations in the attorney=s legal
representation of the client. Goffney, 56 S.W.3d at 194.[2] 
We have never held that self-dealing, deception, and misrepresentation
must all be present in order for a breach of fiduciary duty claim to stand;
rather, we stated that the allegations in support of a breach of
fiduciary duty claim must simply go beyond the mere negligence allegations in a
malpractice action. McMahan, 108 S.W.3d at 495.








2.       Trousdale
alleged breach of fiduciary duty claims that are separate from her negligence
claims.

In her first issue, Trousdale contends that her breach of
fiduciary duty claims were timely filed, as they are separate and independent
from her claims for legal malpractice, and subject to a four-year statute of
limitations. Specifically, she asserts that appellees misrepresented the status
of the probate action and the reason her file could not be returned to her,
while appellees (1) knew and failed to disclose that her cases had been
dismissed for want of prosecution; (2) continued to bill and collect fees from
her; and (3) refused to return her file.  She claims that these actions
constitute a breach of the fiduciary duties owed to her.  She further argues
that these claims are subject to a four-year statute of limitations, which had
not run as of the date she filed suit.

We agree with Trousdale that her claims for breach of
fiduciary duties are separate and independent from her legal malpractice
claims, and that they were timely filed.

In Texas, a fiduciary relationship exists between attorneys
and clients as a matter of law. Goffney, 56 S.W.3d at 193.  The Texas
Supreme Court has noted that the term fiduciary Arefers to
integrity and fidelity@ and Acontemplates fair
dealing and good faith . . . as the basis of the transaction.@ Kinzbach Tool
Co. v. Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509, 512 (1942).  To
this end, the attorney-client relationship is one of A>most abundant good
faith,=@ requiring
absolute perfect candor, openness and honesty, and the absence of any
concealment or deception. Goffney, 56 S.W.3d at 193 (quoting Perez v.
Kirk & Carrigan, 822 S.W.2d 261, 263B66 (Tex. App.CCorpus Christi
1991, writ denied)).  As a fiduciary, an attorney is obligated to render a full
and fair disclosure of facts material to the client=s representation. Willis
v. Maverick, 760 S.W.2d 642, 645 (Tex. 1988).  However, this duty to inform
does not extend to matters beyond the scope of representation. Joe, 145
S.W.3d at 159B60.








This Court has previously examined breach of fiduciary duty
claims asserted by clients against their former attorneys. See, e.g.,
Goffney, 56 S.W.3d at 194; Deutsch, 97 S.W.3d at 189; McMahan,
108 S.W.3d at 477.  In Goffney, a client sued her former attorney for
legal malpractice, breach of contract, DTPA violations, and breach of fiduciary
duty. Goffney, 56 S.W.3d at 188.  The client later amended her petition
to drop her legal malpractice claim, and proceeded to trial on her breach of
contract, DTPA, and breach of fiduciary duty claims. Id. at 189.  In
support of those claims, the client generally alleged that the attorney (1) did
not properly prepare the lawsuit for trial; (2) failed to respond to special
exceptions, which pointed out defects in her pleadings; and (3) failed to
provide timely supplemental answers to interrogatories, thereby precluding the
attorney from calling crucial witnesses. Id. at 190B91.  With respect
to her breach of fiduciary duty claim, the client alleged that the attorney (1)
abandoned her at trial; (2) did not properly prepare the lawsuit for trial; and
(3) misled the client into believing the case had been properly prepared for
trial. Id. at 193.

The jury found in favor of the client on all her claims,
the trial court entered judgment substantially in accordance with the verdict,
and the attorney appealed. Id. at 189B90.  In reversing
the trial court=s judgment, we held that the client=s breach of
contract, DTPA, and breach of fiduciary duty claims were essentially legal
malpractice claims. Id. at 190.  Because the client had abandoned her
legal malpractice claims before trial, we held that she could not recover on
other causes of action which amounted to nothing more than restated claims for
legal malpractice. Id.

With respect to the breach of fiduciary duty claim, we
noted that the client=s allegations were the same as those made
in support of her breach of contract and DTPA claims. Id. at 193.  We
concluded that these allegations constituted nothing more than a claim for
legal malpractice, and that they did not support a separate cause of action for
breach of fiduciary duty. Id. at 194.  However, in our discussion of the
latter, we explained:

Breach of fiduciary duty by an
attorney most often involves the attorney=s failure to
disclose conflicts of interest, failure to deliver funds belonging to the
client, placing personal interests over the client=s interests,
improper use of client confidences, taking advantage of the client=s trust, engaging
in self-dealing, and making misrepresentations.








Id.
at
193.  Because the client=s allegations did not amount to
self-dealing, deception, or misrepresentations in the attorney=s legal
representation of the client, we concluded that they did not support a separate
cause of action for breach of fiduciary duty. Id. at 194.  We have since
applied this standard for evaluating breach of fiduciary duty claims in light
of the non-fracturing rule in several instances. See Deutsch, 97 S.W.3d
at 189B90; McMahan,
108 S.W.3d at 495B96.

In Deutsch, a law firm sued its former client to
recover unpaid legal fees. Deutsch, 97 S.W.3d at 184.  The client
counterclaimed, asserting claims for negligence, breach of contract, breach of
fiduciary duty, negligent misrepresentation, DTPA violations, and fraud against
the law firm and the individual attorney who handled the file. Id.  At
the close of all the evidence at trial, the law firm moved for a directed
verdict. Id.   The law firm argued, and the trial court agreed, that the
client=s allegations had
impermissibly fractured his negligence claim, and that the statute of
limitations barred all of the client=s claims except
for his negligence claim. Id. at 184B85, 189.  The
trial court then submitted the case to the jury, which found that the client=s own negligence
caused his injuries. Id. at 185.  The jury awarded the law firm the full
amount of its unpaid bills, plus the attorney=s fees incurred in
bringing the collection suit. Id.  The client appealed. Id.








In reversing the trial court=s judgment, we
undertook an extensive examination of the fifteen allegations made in support
of the client=s breach of fiduciary duty claim. Id. at 187B91.  We concluded
that the gist of ten of the fifteen allegations was that the law firm did not
exercise that degree of care, skill, or diligence as attorneys of ordinary skill
and knowledge commonly possess, and therefore those allegations should be
pursued only as a negligence claim. Id. at 189B90.  However, we
further concluded that three of the client=s allegations,
namely that the law firm (1) failed to counsel and advise the client about the
conflicts of interest which arose during the law firm=s representation
of the client; (2) failed to withdraw from the representation of the client
once the conflicts arose; and (3) failed to advise the client to retain
separate counsel in light of the law firm=s conflicts of
interest in representing the client, were appropriately classified as a breach
of fiduciary duty claim independent of the client=s negligence
claim. Id. at 187, 190.  The gist of these complaints was not that the
law firm failed to exercise that degree of care, skill, or diligence as
attorneys of ordinary skill and knowledge commonly possess. Id. at 190. 
Rather, as we stated in Goffney, these allegations were of the type that
supported a cause of action for breach of fiduciary duty separate and independent
from a claim for legal malpractice. Id. at 189 (citing Goffney,
56 S.W.3d at 190B94).

Finally, in McMahan, a client sued his former
business associates and his former attorney for, among other things, fraud,
fraudulent inducement, breach of fiduciary duty, and legal malpractice. McMahan,
108 S.W.3d at 477.  Specifically, the client alleged that the attorney gave him
false information and advice regarding the client=s stock ownership
in a business entity he formed with the other defendants, and that the attorney
falsely told him he was a shareholder of the business entity in order to induce
him into contributing assets to the company. Id. at 476, 495B96.  The client
further alleged that the attorney failed to correct the misrepresentation prior
to the client=s execution of a settlement agreement with the other
defendants, and that because the attorney gave him this false information and
advice, he continued to transfer assets to the company and later signed the
settlement agreement, rather than attempting to recover the full value of the
assets he contributed. Id. at 496.  The defendants pleaded numerous affirmative
defenses, including release, ratification, and limitations, and the attorney
moved for summary judgment on traditional and no-evidence grounds. Id. at
477.  The trial court granted the attorney=s motions for summary
judgment, but did not specify the grounds upon which the motions were granted. Id. 
The client appealed.








In our examination of the client=s claims against
the attorney, we found that the client had presented more than a scintilla of
evidence that the attorney made material misrepresentations to the client, that
he had a duty to disclose the client=s lack of stock
ownership, and that the client justifiably relied on his representations. Id.
at 495.  We therefore concluded that the client=s fraud and
fraudulent inducement causes of action survived the attorney=s no-evidence
motion for summary judgment. Id.  We similarly concluded that the client=s legal
malpractice and breach of fiduciary duty claims survived the attorney=s motion for summary
judgment. Id. at 496.  The attorney did not argue that the
non-fracturing rule barred the independent assertion of claims of breach of
fiduciary duty; rather, the attorney merely argued that there was no evidence
of an attorney-client relationship between himself and the client at the time
the settlement agreement was executed. Id. at 495B96.  We determined
that the attorney had not sufficiently refuted the existence of an
attorney-client relationship during the period surrounding the formation of the
business entity, and stated that, contrary to the attorney=s position, Texas
law requires an attorney who has made misstatements to a client to make a full
disclosure of the truth.[3]
Id. at 496 (citing Willis, 760 S.W.2d at 645; Anderson,
Greenwood & Co. v. Martin, 44 S.W.3d 200, 212B13 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied)).








As noted above, we have explained that breach of fiduciary
duty by an attorney often involves the attorney=s failure to
disclose conflicts of interest, failure to deliver funds belonging to the
client, placing personal interests over the client=s interests,
improper use of client confidences, taking advantage of the client=s trust, engaging
in self-dealing, and making misrepresentations. See Goffney, 56 S.W.3d
at 194; see also McMahan, 108 S.W.3d at 495; Deutsch, 97 S.W.3d
at 190.  We have further explained that, in order to support a cause of action
for breach of fiduciary duty separate and apart from a claim for legal
malpractice, the allegations in the petition must amount to self-dealing,
deception, or misrepresentations in the representation of the plaintiff that go
beyond the mere negligence allegations in a legal malpractice action. McMahan,
108 S.W.3d at 495;  Goffney, 56 S.W.3d at 194; see also Deutsch,
97 S.W.3d at 190.

Here, Trousdale asserted claims for legal malpractice and
breach of fiduciary duties.  Trousdale alleged that appellees committed
malpractice when they failed to (1) appear at trial settings in
September-October 2002, which resulted in the dismissal of her cases for want
of prosecution; and (2) take any action to request the Liberty County courts to
reinstate her cases after their dismissal.  The gist of these complaints is
that appellees did not exercise that degree of care, skill, or diligence as
attorneys of ordinary skill and knowledge commonly possess, and these claims
were properly pursued as claims for legal malpractice. See McMahan, 108
S.W.3d at 495.

However, in her petition, Trousdale also alleged the
following additional failings by appellees:

!                  
Henry only told
her that they Amissed it,@ referring to a hearing that was
scheduled, not that the case has been dismissed;

!                  
They failed to
disclose the dismissal of her claims to her;

!                  
They continued
to demand and accept payment for their services, even after her cases were
dismissed and Henry refused to speak with her;

!                  
They
misrepresented to her that her cases could not be rescheduled, and that she
could not obtain copies of pleadings and orders, because the files were Asealed@; and

!                  
They
intentionally refused to return her files to her to conceal that her cases had
been dismissed and were time-barred.

These allegations go beyond the mere negligence allegations
in a legal malpractice action.  They involve allegations of deception and
misrepresentations committed by appellees while they represented Trousdale and
while they still owed her duties. See id.








If Trousdale had alleged only that appellees negligently
allowed the Liberty County lawsuits to be dismissed for want of prosecution,
her claims would amount only to one for legal malpractice. See Latham v.
Castillo, 972 S.W.2d 66, 69 (Tex. 1998) (distinguishing between legal
malpractice claims and claims for violation of the DTPA); Sullivan v. Bickel
& Brewer, 943 S.W.2d 477, 482B83 (Tex. App.CDallas 1995, writ
denied) (distinguishing between legal malpractice claims and claims for
fraudulent billing practices); Jampole v. Matthews, 857 S.W.2d 57, 62
(Tex. App.CHouston [1st Dist.] 1993, writ denied) (same).  But,
that is not what she alleged in her breach of fiduciary duty cause of action. 
She alleged more, as we have listed above:  when Trousdale called about a
hearing in the probate action, Henry stated only that a hearing had been
missed, not that the cases were dismissed; Henry told her she could not get
copies of her file because the files were sealed; and the firm refused to
return her files for almost two years after she asked for their return, and
they did this to conceal that both the probate action and the district court
action were dismissed. See Latham, 972 S.W.2d at 69.  Construing these
facts and allegations in the light most favorable to Trousdale, we conclude
that her claims for breach of fiduciary duty are separate and independent from
her claims for legal malpractice.

3.       Trousdale=s breach of
fiduciary duty claims were timely filed.

To be considered timely, claims for breach of fiduciary
duty must be filed within four years of the date the cause of action accrues. Tex. Civ. Prac. & Rem. Code _ 16.004(a)(5). 
Generally, a cause of action accrues, and the statute of limitations begins to
run, when facts come into existence that authorize a claimant to seek a
judicial remedy. Johnson & Higgins of Texas, Inc. v. Kenneco Energy,
Inc., 962 S.W.2d 507, 514 (Tex. 1998).








Trousdale filed suit in December 2005.  She alleges that
appellees breached the fiduciary duties owed to her, and therefore her cause of
action accrued, in December 2002 and January 2003.  While appellees do not deny
that the acts constituting the alleged breach were committed during this time
frame, they contend that Trousdale knew of her alleged injury, at the very
latest, in June 2003.

Assuming without deciding that Trousdale=s cause of action
for breach of fiduciary duty accrued as early as December 2002Con Trousdale=s first
conversation with HenryCTrousdale filed suit on her breach of
fiduciary duty claims within the four-year statute of limitations by filing in
December 2005.

In short, we hold that the trial court erred in granting
appellees= motion for summary judgment on Trousdale=s claims for
breach of fiduciary duty based on appellees= statute of
limitations defense.  Therefore, we sustain Trousdale=s first and second
issues.

B.      Trousdale=s legal
malpractice claims are time-barred.

In her third issue, Trousdale contends that she timely
filed her legal malpractice claims.  Although these claims are subject to a
two-year statute of limitations, she maintains that the fraudulent concealment
doctrine tolled the running of limitations until appellees returned her file in
August or September 2005.  She asserts that a breach of the duty to disclose is
tantamount to concealment, and reasons that appellees= failure to
disclose the dismissal of the Liberty County lawsuits, coupled with appellees= refusal to return
her file until August or September 2005, should result in the tolling of
limitations until that time.

Trousdale further contends that the trial court erred in
sustaining appellee=s objection to her affidavit and striking
a statement from that affidavit, as the statement did not conflict with her
earlier deposition testimony.  She argues that even if there is a slight
conflict between the two, a genuine issue of material fact exists that
precludes summary judgment on when she discovered or should have discovered her
cause of action.








In contrast, appellees contend that neither the fraudulent
concealment doctrine nor the discovery rule tolled limitations on Trousdale=s legal
malpractice claims until August or September 2005.  They assert that Trousdale
admitted knowledge of, and intent to sue for, her claims in June 2003, and that
Trousdale was even aware of the full extent of her injuries by that time. 
Appellees therefore argue that the tolling effect of the discovery rule and the
fraudulent concealment doctrine terminated, and the statute of limitations on
Trousdale=s legal malpractice claims began to run, as of June
2003.  Appellees further contend that the trial court did not abuse its
discretion in striking a statement from Trousdale=s affidavit, as
that statement materially contradicted her earlier deposition testimony and
handwritten notes, and merely represented an attempt to create a fact issue to
avoid summary judgment.

We agree with appellees that neither the fraudulent
concealment doctrine nor the discovery rule tolled limitations on Trousdale=s legal
malpractice claims until August or September 2005.

1.       The
discovery rule and the fraudulent concealment doctrine did not toll limitations
on Trousdale=s legal malpractice claims until
August or September 2005.

a.       The
discovery rule and the fraudulent concealment doctrine.

In claiming that the statute of limitations was tolled,
Trousdale asks us to hold preliminarily that the trial court erred in striking
one statement from her affidavit.  We do not address that claim; even if the
trial court did err in striking the statementCa holding we do
not reachCher claims would still be barred.[4]

In Texas, legal malpractice actions are governed by a
two-year statute of limitations.  Willis, 760 S.W.2d at 644. 
Limitations generally begin to run when facts have come into existence that
authorize a claimant to seek a judicial remedy. Apex Towing Co. v. Tolin,
41 S.W.3d 118, 120 (Tex. 2001).








However, the Texas Supreme Court has held that the
discovery rule applies to legal malpractice claims, since Ait is unrealistic
to expect a layman client to have sufficient legal acumen to perceive an injury
at the time of the negligent act or omission of his attorney.@ Willis,
760 S.W.2d at 645.  Under the discovery rule, the statute of limitations
for legal malpractice actions does not begin to run until the claimant
discovers or should have discovered through the exercise of reasonable care and
diligence the facts establishing his cause of action. Id. at 646. 
Discovery occurs when a plaintiff has knowledge of such facts, conditions, or
circumstances as would cause a reasonably prudent person to make an inquiry
that would lead to discovery of the cause of action. Bell v. Showa Denko
K.K., 899 S.W.2d 749, 753B54 (Tex. App.CAmarillo 1995,
writ denied); Smith v. Cutrer & Jefferson, No. 14-00-00100-CV, 2002
WL 87485, at *4 (Tex. App.CHouston [14th Dist.] Jan. 24, 2002, no
pet.) (not designated for publication).  Knowledge of such facts is, in law,
equivalent to knowledge of the cause of action for limitations purposes. See
White v. Bond, 362 S.W.2d 295, 295 (Tex. 1962).

A defendant seeking summary judgment on the basis of
limitations must conclusively prove when the cause of action accrued and must
negate the discovery rule by proving that, as a matter of law, there is no
genuine issue of fact about when the plaintiff discovered or should have
discovered the nature of his injury. KPMG Peat Marwick v. Harrison County
Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  If the movant
establishes that the statute of limitations bars the action, the nonmovant must
then adduce summary judgment proof raising a fact issue in avoidance of the
statute of limitations. Id.








The fraudulent concealment doctrine is an affirmative
defense to the statute of limitations. See id. at 749; Ponder v.
Brice & Mankoff, 889 S.W.2d 637, 645 (Tex. App.CHouston [14th
Dist.] 1994, writ denied).  This doctrine provides that where a defendant is
under a duty to make a disclosure but fraudulently conceals the existence of a
cause of action from the party to whom it belongs, the defendant is estopped
from relying on the defense of limitations until the party learns of the right
of action or should have learned thereof through the exercise of reasonable
diligence. Ponder, 889 S.W.2d at 645.  However, the estoppel effect of
fraudulent concealment ends when a party learns of facts, conditions, or
circumstances which would cause a reasonably prudent person to make inquiry,
which, if pursued, would lead to discovery of the concealed cause of action. Id.
(citing Borderlon v. Peck, 661 S.W.2d 907, 909 (Tex. 1983)). 
Notably, this is the same standard that applies  to the discovery rule. Compare
Borderlon, 661 S.W.2d at 909, with Bell, 899 S.W.2d at 754. 

To prove fraudulent concealment, a plaintiff must
demonstrate the defendant had (1) actual knowledge that a wrong occurred; (2) a
duty to disclose the wrong; and (3) a fixed purpose to conceal the wrong. McMahan,
108 S.W.3d at 493.  Here, appellees sought summary judgment on, among other
things, the issue of whether the fraudulent concealment doctrine tolled
limitations on Trousdale=s legal malpractice claims until August or
September 2005.

As we explain below, based upon the summary judgment
evidence appellees attached to their motion for summary judgment, we conclude
that appellees proved as a matter of law that, as of June 2003, Trousdale knew
facts that would cause a reasonably prudent person to make an inquiry which, if
pursued, would lead to discovery of her legal malpractice causes of action. 
Appellees therefore demonstrated that neither the discovery rule nor the
fraudulent concealment doctrine tolled limitations on Trousdale=s legal
malpractice claims until August or September 2005, and thus met their burden on
summary judgment.  The evidence Trousdale attached to her response to the
summary judgment motion did not create a fact issue.

b.       Appellees
proved that, as of June 2003, Trousdale knew facts that would cause a
reasonably prudent person to investigate and to discover the legal malpractice
causes of action.

The summary judgment evidence produced by appellees on the
limitations issue consists of the following:








!                  
Excerpts from
Trousdale=s deposition:

"                  
In January
2003, Henry told Trousdale something was missed in connection with her probate
action;

"                  
Henry told
Trousdale the case was sealed and that Trousdale would need a probate lawyer
attorney to pursue things further;

"                  
Henry hung up
on Trousdale when Trousdale asked Henry to reschedule the probate hearing;

"                  
Henry refused
to answer Trousdale=s phone calls.

!                  
Trousdale
sends a fax to a potential lawyer claiming she needs to sue Henry because Aeverything I have worked for is goneCeven my inheritance.@

Trousdale=s affidavit attached to her summary
judgment response contained the following evidence:

!                  
Henry told
Trousdale she could not obtain her file from either Henry or the Liberty County
courthouse because the file was sealed;

!                  
Henry did not
tell her the status of the district court action and she didn=t ask;

!                  
Appellees never
told her either action was dismissed;

!                  
Trousdale didn=t discover either action had been
dismissed until she received the file in August-September of 2005;

!                  
Trousdale first
knew she had a risk of harm in the district court action when she received her
files;

!                  
After the last
conversation with Henry, Trousdale began looking for a new probate attorney;

!                  
Trousdale
continued paying her legal bills while looking for a new attorney;

!                  
Trousdale
still considered appellees her attorneys until she hired a new probate attorney
and, since she never hired a new attorney in the district court action and they
never withdrew, she considered them her attorneys throughout.

Even taking all of Trousdale=s statements in
her summary judgment affidavit as true, they do not overcome the negative
information Trousdale knew that should have caused her to investigate more:








!                  
something
related to her probate case was missed;

!                  
her lawyer hung
up on her and refused to accept her calls;

!                  
her lawyer told
her she should hire a new probate lawyer;

!                  
Trousdale had
at least preliminary discussions with a new lawyer;

!                  
Trousdale
sent this new lawyer a fax telling him she needed to sue Henry because she had
lost everything, including her inheritance.[5]

This information would have prompted a reasonable person to
investigate further and, ultimately, to discover that her actions were
dismissed and that she should consider filing a malpractice action.[6]

In short, because no fact question exists about when
Trousdale=s legal malpractice causes of action accrued and
limitations began to run, the trial court did not err in granting summary
judgment in favor of appellees on Trousdale=s legal
malpractice claims.  We therefore overrule Trousdale=s final issue.

 








Conclusion

In summary, we conclude that the trial court erred in
viewing Trousdale=s breach of fiduciary duty claims as
nothing more than claims for legal malpractice.  We reverse that portion of the
trial court=s order granting summary judgment on Trousdale=s breach of
fiduciary duty claims and dismissing those claims with prejudice.  However, we
agree with the trial court that neither the discovery rule nor the fraudulent
concealment doctrine tolled the running of the statute of limitations on Trousdale=s legal
malpractice claims until August or September 2005.  We affirm that portion of
the trial court=s order granting summary judgment on
Trousdale=s legal malpractice claims and dismissing those claims
with prejudice.  We remand the case to the trial court for further proceedings
in accordance with this opinion.

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Majority and Dissenting Opinions filed June 24, 2008.

Panel consists of
Justices Yates, Fowler, and Guzman (Guzman, J., concurring and dissenting).

 









[1]  Appellees attached to their joint motion for summary
judgment a copy of a facsimile transmission from Trousdale to J.D. Johnson,
Trousdale=s prospective attorney, dated June 17, 2003.  In this
transmission, titled AExplanation and Facts For Lawsuit,@ Trousdale recounted the events leading to the
lawsuits filed in Liberty County, and summarized the actions taken and
representations made by Henry in her legal representation of Trousdale.  At the
conclusion of the transmission, Trousdale notes, AI want to sue her for my inheritance and goods in apartment.  P.S. I
must file a lawsuitCIt is not an option not to file against Annette Henry
and her office.  Everything I have worked for is goneCEven my inheritance.@  Appellees contend that this statement confirms that Trousdale knew of
the facts supporting her claims by June 2003, at the latest.





[2]  Although appellees claim that self-dealing,
deception, and misrepresentation must all be present for a breach of fiduciary
duty claim to stand, our cases hold differently. See Goffney, 56 S.W.3d
at 193B94; Deutsch, 97 S.W.3d at 189; McMahan,
108 S.W.3d at 495.  In addition, in a non-lawyer breach of fiduciary duty
setting, Texas courts have never held that all three must be present. See W.
Reserve Life Assurance Co. of Ohio v. Graben, 233 S.W.3d 360, 374 (Tex.
App.CFort Worth 2007, no pet.) (explaining that a financial
adviser breaches the fiduciary duties owed to his client when he (1) fails to
put his client=s interests above his own; (2) treats his clients
unfairly; (3) fails to make reasonable use of the confidence his clients place
in him; (4) fails to act in the utmost good faith and fails to exercise the
most scrupulous honesty toward his clients; or (5) fails to fully and
fairly disclose all important information to his clients concerning a
transaction); Dunnagan v. Watson, 204 S.W.3d 30, 46 (Tex. App.CFort Worth 2006, pet. denied) (stating that a limited
partner breaches the fiduciary duties owed to the limited partnership when he
(1) enters into a transaction that is not fair and equitable to the limited
partnership; (2) fails to act in the utmost good faith and fails to exercise
the most scrupulous honesty toward the limited partnership; (3) places his own
interest before the limited partnership=s
interests; (4) uses his position to gain any benefit for himself at the expense
of the limited partnership; or (5) he places himself in a position where
his self-interest might conflict with his obligations as a fiduciary); Abetter
Trucking Co. v. Arizpe, 113 S.W.3d 503, 510 (Tex. App.CHouston [1st Dist.] 2003, no pet.) (explaining that an
employee breaches the fiduciary duties owed to his employer when he (1)
competes with his employer on his own account in matters relating to the
subject matter of his employment; (2) fails to deal fairly and openly with his
employer in all transactions between them; (3) fails to fully disclose to his
employer information about matters affecting the company=s business; or (4) uses his position to gain a
business opportunity belonging to his employer); Lesikar v. Rappeport,
33 S.W.3d 282, 296B97 (Tex. App.CTexarkana
2000, pet. denied) (explaining that the executrix of an estate breaches the
fiduciary duties owed to the estate beneficiaries when she (1) violates her
duty of good faith and candor to the beneficiaries; (2) fails to fully disclose
to the beneficiaries matters affecting the beneficiaries= interests; (3) uses the advantage of her position to
gain any benefit for herself at the expense of the estate; (4) places herself
in any position where her self-interest will or may conflict with her
obligations as executrix); or (5) makes a profit out of the estate); NRC,
Inc. v. Huddleston, 886 S.W.2d 526, 530 (Tex. App.CAustin 1994, no writ) (stating that a real estate
agent breaches the fiduciary duties owed to his client when he (1) violates his
duty of good faith and candor; (2) fails to fully disclose to the client
respecting matters affecting the client=s
interests; or (3) uses the relationship to benefit his personal
interest); see also Burrow v. Arce, 997 S.W.2d 229, 237B40 (Tex. 1999) (consulting agency law and non-lawyer
breach of fiduciary duty cases to determine not only the bounds of the
fiduciary duty owed by lawyers but also to determine whether economic harm was
necessary before a client could sue).  As a result, we decline to adopt a more
stringent standard.





[3]  While McMahan does not expressly address the non-fracturing
rule, that opinion is noteworthy for our recitation of the standard that
governs our analysis of causes of action in light of that rule. See McMahan,
108 S.W.3d at 495B96.  There, we stated:

 

Attorneys may be liable for a
breach of fiduciary duty, but such a claim requires allegations of
self-dealing, deception, or misrepresentations that go beyond the mere
negligence allegations in a malpractice action.  If the gist of the client=s complaint is that the attorney
did not exercise that degree of care, skill, or diligence as attorneys of
ordinary skill and knowledge commonly possess, then that complaint should be
pursued as a negligence claim, rather than some other claim. If, however, the
client=s complaint is more appropriately
classified as a fraud, DTPA, breach of fiduciary duty, or breach of contract
complaint, then the client can assert a claim other than negligence.

 

Id. (internal citations omitted).  





[4]  In the struck statement, Trousdale states, AThe first time I realized I had a risk of harm was in
August or September 2005 when I saw this in the file I had been given.@  This is a subjective statement, reflecting her
personal belief, which is a subjective standard.  As we state below, the
discovery rule and the fraudulent concealment doctrine both measure what the
client should have known based on a reasonable person standardCan objective standard.





[5]  Trousdale claims that the fax does not really mean
that she knew she had lost everything.  Trousdale misses the significance of
the fax.  The fax shows that, even as of June 2003, she thought that something
was amiss regarding her lawyers= representation
of her and she was concerned that her inheritance might be in jeopardy.  Taking
into account the other negative indicatorsCsuch
as her lawyer refusing to accept her callsCat
this point, a reasonable person would have investigated fully the status of her
causes of action and hired a new lawyer, if necessary, to fully investigate.





[6]  In fact, Trousdale could have discovered that the
probate action and the district court action had been dismissed for want of
prosecution by examining the public record, and, by this time, she should have
been suspicious enough to inquire about the two actions at the courthouse.  The
matters disclosed in public records filed in a county courthouseCincluding the dismissal of a legal actionChave been held to preclude application of the
discovery rule to toll the accrual of limitations on a cause of action. See
Lang v. City of Nacogdoches, 942 S.W.2d 752, 758 (Tex. App.CTyler 1997, writ denied) (holding discovery rule
inapplicable to facts of case because appellants were charged with constructive
notice of what could have been known by examination of the public record;
dismissal of criminal case against appellants was a matter of public record,
and Athey or their attorney could have discovered the
dismissal by examining the public records@). 
A person is charged with constructive notice of the actual knowledge that could
have been acquired by examining public records, and constructive notice in law
creates an irrebuttable presumption of actual notice. Mooney v. Harlin,
622 S.W.2d 83, 85 (Tex. 1981).  Furthermore, when evidence of a cause of action
may be disclosed by examination of public records, limitations begin to run
from the time the cause of action could have been discovered by the exercise of
ordinary diligence. See id. (citing Sherman v. Sipper, 137 Tex.
85, 152 S.W.2d 319, 321 (1941)).